Burke, J.
Northville Dock Pipe Line Corp. is a wholly owned subsidiary of the Northville Dock Corp. (hereinafter referred to as Dock), a large independent wholesale supplier of heating oils and other petroleum products on Long Island. The North-ville Dock Pipe Line Corp. was organized in 1964, pursuant to the Transportation Corporations Law for the purpose of constructing and operating a pipe line from Riverhead, Long Island, where Dock maintains a deep water oil unloading terminal, to Pine Aire, Long Island.
Part of the proposed line under consideration by the appellant Pipe Line Corp. for such purposes would pass through farm land owned by respondents L. Leon Fanning, Edith Fanning and Vera Fanning Brush. A detailed evaluation of this plan required appellant to survey this land. Accordingly, a formal request to enter this property for such a purpose was made by Northville only to be denied by the Fannings, primarily because they feared that these surveyors might carry onto the property an infestation known as the ‘ ‘ golden nematode ’ ’, a worm capable of both destroying their potato crop and severely limiting the productiveness of their land for a limited period of time. Northville then commenced this action for an injunction restraining the respondents from forcibly obstructing their efforts to survey the land.
By statute, a pipe line corporation is ‘‘ organized to construct and operate for public use * * * lines of pipe for conveying or transporting therein petroleum, gas, liquids or any products ”. (Transportation Corporations Law, § 80.) In fulfilling this purpose, it is empowered to “ make such examinations and surveys .as it may deem necessary for the selection of the most advantageous route * * * subject to liability for all damage done thereto.” (Transportation Corporations Law, § 81.) When its route has been finally designated, it has the power to acquire any necessary property by condemnation. (Transportation Corporations Law, § 83.) In support of its petition, appellant has relied upon this expression of power in section 81, permitting examinations and surveys when deemed necessary by the pipe line corporation. The Fannings, on the other hand, contend that the petitioner has failed to show that the pipe line, if constructed, would indeed be employed for “public use” as required by section 80. In addition, they argued that the peti *619 tion must be declared insufficient even if a public use is demonstrated since Northville failed to adequately demonstrate its ability to protect these respondents from any damage that might develop as a result of the survey.
The hearing held at Special Term dealt exclusively with the question of “ public use At its conclusion, that court refused to issue the restraining order sought by the appellant and instead characterized the proposed use of the pipe line to be other than the public use necessary to permit the petitioner to utilize the powers contained in article 7 of the Transportation Corporations Law. This determination was affirmed by the Appellate Division in a memorandum opinion wherein they stated that ‘ ‘ Petitioner may not exercise the power of condemnation unless it seeks to take private property for a public use ” (28 A D 2d 721, 722).
It is well established, as the Appellate Division indicated, that a corporation such as the appellant must be acting for a “ public use ” when it seeks to exercise its condemnation powers. The question involved in this appeal is whether such a corporation is required to prove that a contemplated pipe line will serve a public use even before that corporation can proceed with an exploratory survey deemed necessary for purposes of selecting “ the most advantageous route ” within the meaning of section 81 of the act. While the specific powers of a pipe line corporation have been authorized by statutes for approximately 90 years, it nevertheless appears that this is a question of first impression. (L. 1926, ch. 762, derived in part from L. 1878, ch. 203.)
As the court below properly indicated the mere fact that appellant was incorporated under the provisions of the Transportation Corporations Law does not per se render it a public service corporation with the power of eminent domain (28 A D 2d, p. 722; see, also, 73 C.J.S., Public Utilities, § 2). Thus, in Matter of Split Rock Cable Road Co. (128 N. Y. 408), this court refused to permit that petitioner to take certain land for its use as a public corporation since it was apparent that the public benefit, if any, to be derived from the taking, would be incidental to the private benefit that would result. More recently, in Denihan Enterprises v. O’Dwyer (302 N. Y. 451, 457), we stated: “ It is well settled that whether or not a proposed condemnation is for a public purpose is a judicial question These cases, however, merely reiterate the rule that a public corporation possessing condemna *620 tion powers must establish that it is in fact performing a public use or public benefit before it can proceed with a condemnation.
In the instant case, the Fannings’ initial opposition to the restraining order was founded on this concept of no public use. Indeed, this was the determining factor in the decision of the Appellate Division, as they denied the restraining order because “ Petitioner may not exercise the power of condemnation unless it seeks to take private property for a public use.” In fact, however, petitioner is not now attempting to exercise its condemnation power. Rather, it is merely seeking an order which will permit a survey of respondents ’ land to ascertain the ‘ ‘ most advantageous route ’ ’ for a pipe line. Subsequently, petitioner may decide that the best route does not lie across the Fanning property. Should this occur, the Fannings would of course retain ownership of the property. Conversely, petitioner may well conclude that the pipe line should pass through this land. At that point, if the parties are unable to reach a private agreement, a condemnation proceeding would be permitted. Only at this latter time must petitioner prove that its pipe line will serve a public use. (See, e.g., Denihan Enterprises v. 0 ’Dwyer, supra.)
It cannot be disputed that, once petitioner has completed its survey and selected its pipe line route, it will be better able to obtain commitments from neighboring wholesale suppliers expressing their intent to utilize the line and indicating the quantity they are capable of delivering at that time. Since section 90 of the act limits the allotment of a participating supplier of the line to the quantity it is capable of furnishing at the time application is made, it is also in the best interests of petitioner’s competitors that they refrain from applying for use of a line until the last possible moment. Yet, if the petitioner must show “ public use ” and if these competitors intend to assist it in doing so, they would necessarily be required to make an otherwise premature commitment which would also serve as a limitation. For all these reasons, petitioner will be better prepared to demonstrate that the line will serve a public use after the survey has been completed and a definite route selected. At that time, respondents may oppose the condemnation on this same ground — no public use. We hold only that both Special Term and the Appellate Division erred in requiring the petitioner to prematurely establish that its line will serve a public use.
*621 Respondents, in opposing the restraining order, also argued that petitioner had failed to adequately provide for any damages that might result from the-survey. (Transportation Corporations Law, § 81, subd. 1.) As noted earlier, there was great apprehension by the Fannings that, as a result of the survey, the farm might become infested with the “ golden nematode ’’worm. Consequently, the hearing at Special Term was marked by continuous references to this disease and to its effects on productive farmlands. However, that court did not reach the question as it concluded that the petitioner was not performing a public use in surveying the land. Since we now hold that this objection was raised, considered and sustained prematurely, the case should be remanded to Special Term to determine precisely what measures must be taken and what security should be required to protect the respondents from any damages which might result from the survey.
Accordingly, the order appealed from should be reversed and the matter remanded to Special Term for further proceedings in accordance with this opinion.
Chief Judge Fuld and Judges Scileppi, Bergan, Keating and Breitel concur with Judge Burke ; Judge Jasen dissents and votes to affirm on the opinion at the Appellate Division.
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.