**SQUARE BUTTE ELECTRIC COOPER- ATIVE, Plaintiff and Appellee,**

v.

**Robert J. DOHN et al., Defendants,**

**and**

**E. Gene Hilken, Defendant and Appellant.**

**Civ. No. 8989.**

Supreme Court of North Dakota.

June 27, 1974.

Loren L. Johnson, Johnson, Johnson & Devine, P. C., Lakota, for plaintiff and appellee.

Carma Christensen, Christensen, Christensen & Baer, Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

E. Gene Hilken appeals from an order of the district court dated December 12, 1973.

The pertinent part of that order reads:

"ORDERED That good cause has been shown and the Plaintiff is hereby granted permission to enter upon the lands of the Defendants, hereinafter described, for the purpose of making surveys, including soil testing and ground resistance measurements, and such other work as may be reasonably necessary, subject to the following general restrictions:

"1. That the Plaintiff must proceed in the manner which provides the least

private injury, and subject to the provisions of Section 32–15–21 of the North Dakota Century Code.

"2. That the Defendants shall be given reasonable notice to enter on their property, with such notice given either by letter or personal contact.

"3. That the Plaintiff be required to make entry in a manner that will insure that livestock will not escape, and that the Plaintiff, their employees and agents be required to leave gates and fences in the manner in which they were found, at the time of entry.

"4. That the Plaintiff's survey be restricted to the general area of the proposed taking.

"5. That there shall be no cutting of trees on the property of the Defendants.

"6. That the Plaintiff be required to file a map or drawing showing the area over which the proposed power line will be built, and that the Plaintiff be restricted in conducting a survey to the general area of the proposed taking, which map is attached hereto and made a part hereof."

This order granted the motion made by the plaintiff Square Butte Electric Cooperative, whom we shall hereinafter refer to as Square Butte, in which it requested an order authorizing it to enter upon lands owned by various named defendants, including the appellant E. Gene Hilken, for the purpose of making surveys, soil testing and ground-resisting measurements, pursuant to Section 32–15–06, N.D.C.C.

In the affidavit supporting the motion it is stated:

"1. That the Plaintiff, Square Butte Electric Cooperative, is a North Dakota electric cooperative corporation, duly organized, and has been granted the authority to do business in North Dakota as such by the Honorable Ben Meier, Secretary of State of the State of North Dakota.

"2. That as such, the Plaintiff enjoys the privileges granted to such corporations of the rights of eminent domain and entry upon lands for survey purposes as set forth in Chapter 32–15 of the North Dakota Century Code.

"3. That the Plaintiff has entered into a series of agreements whereby it has contracted to construct, at Nelson Lake in Oliver County, North Dakota, an electric generating plant, consisting of generation station and supporting transmission lines, for the purpose of furnishing electric power to the Minnesota Power and Light Company at Duluth, Minnesota, and also to other contract purchasers, including the Minnkota Power Cooperative, Inc. of Grand Forks, North Dakota.

"4. That such generating station will be known as Center No. 2, and will be located adjacent to the Center No. 1 unit of the Milton R. Young station, operated by the Minnkota Power Cooperative, Inc. at Nelson Lake in Oliver County, North Dakota.

"5. That the Minnkota Power Cooperative, pursuant to the operation of its Center No. 1 unit, has existing transmission line facilities, consisting of a 230 RV transmission line running from the Center plant to Fargo, North Dakota, and also interconnections with a 230 RV transmission line running from Stanton, North Dakota, to the Mandan, North Dakota area.

"6. That in addition to such existing transmission facilities, there will be built further transmission facilities, consisting of a DC transmission line running from the Center No. 2 plant to the Duluth, Minnesota area, and that such line will include substation facilities and converter station for converting AC power to DC power at the Center area site.

"7. That the lands owned by the Defendants as listed in the Motion constitute probable locations for the DC trans-

mission line as a part of its routing from the Center, North Dakota area to Duluth, Minnesota.

"8. That such transmission lines will be built on steel towers of single pole construction, each tower being approximately three feet six inches (3′6″) square at its base, and that approximately seven (7) such towers per mile will be needed to support said transmission line.

"9. That application is now being sought for the Order of the above named Court for permission to enter upon the lands of the Defendants for the purpose of making surveys and for the purpose of determining the suitability of these lands for locating thereon the necessary facilities of the Plaintiff in the connection with construction of the Center No. 2 unit and related transmission facilities."

In resisting the motion, Hilken in a return filed by his counsel asserted:

"1. That he is one of the Defendants named in the above entitled action;

"2. That he owns land as described in the Plaintiff's motion—namely the West One-half and the Northeast Quarter of Section 28, located within Burleigh County;

"3. That the Plaintiff has no right under eminent domain to take the property for the purposes stated in their motion; that the actions of the Plaintiff are unreasonable and without legal justification or excuse. The Defendant further answers that he does not have information sufficient to admit or deny Plaintiff's allegations contained in their affidavit, specifically numbers 1 through 8, but does admit that the Plaintiff is now seeking an order of the court for permission to enter upon the lands of the Defendant;"

On appeal Hilken contends (1) that Square Butte failed to establish sufficient cause to justify the granting of its motion,

and (2) that his constitutional rights were denied to him in the trial court's failure to make a record of the hearing and in its failure to enjoin Square Butte from entering upon the defendant's premises.

The following sections or parts thereof of the North Dakota Century Code are pertinent to a determination of the merit of the first contention.

"32–15–01. * * * Eminent domain is the right to take private property for public use. Private property shall not be taken or damaged for public use without just compensation first having been made to or paid into court for the owner. * * *"

"32–15–02. * * * Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses:

* * * * * *

"10. Oil, gas, and coal pipelines and works and plants for supplying or conducting gas, oil, coal, heat, refrigeration, or power for the use of any county, city, or village, or the inhabitants thereof, together with lands, buildings, and all other improvements in or upon which to erect, install, place, maintain, use, or operate pumps, stations, tanks, and other machinery or apparatus, and buildings, works, and plants for the purpose of generating, refining, regulating, compressing, transmitting, or distributing the same, or necessary for the proper development and control of such gas, oil, coal, heat, refrigeration, or power, either at the time of the taking of said property or for the future proper development and control thereof; * * *"

"32–15–04. * * * The private property which may be taken under this chapter includes:

"1. All real property belonging to any person;

* * * * * * "
"32–15–05. * * * Before property can be taken it must appear:

"1. That the use to which it is to be applied is a use authorized by law;

"2. That the taking is necessary to such use; * * *

* * * * * * "
"32–15–06. Entry for making surveys. —In all cases when land is required for public use, the person or corporation, or his or its agents, in charge of such use may survey and locate the same, but it must be located in the manner which will be compatible with the greatest public benefit and the least private injury and subject to the provisions of section 32–15–21. Whoever may be in charge of such public use may enter upon the land and make examinations, surveys, and maps thereof, and such entry shall constitute no cause of action in favor of the owner of the land except for injuries resulting from negligence, wantonness, or malice." N.D.C.C.

The provisions of Section 32–15–21, N. D.C.C., are not important to a determination of the issues on this appeal.

"32–15–18. * * * The complaint must contain:

"1. The name of the corporation, association, commission, or person in charge of the public use for which the property is sought, who must be styled plaintiff;

"2. The names of all owners and claimants of the property, if known, or a statement that they are unknown, who must be styled defendants;

"3. A statement of the right of the plaintiff;

"4. If a right of way is sought, the complaint must show the location, general route, and termini, and must be accompanied with a map thereof

so far as the same is involved in the action or proceeding; and

"5. A description of each piece of land sought to be taken and whether the same includes the whole or only a part of an entire parcel or tract." N.D.C.C.

Hilken contends that the burden is upon Square Butte to show a public, actual use, not merely a benefit, and that the use must be for the citizens of North Dakota directly and should be specific and not speculative. In support thereof, he refers us to the following quotations from two cases.

"Condemnation could evidently not be had in this state for the purpose alone of serving a public use in another state, * * * " Washington Water Power v. Waters, 19 Idaho 595, at 608, 115 P. 682 at 686 (1911).

"It seems to be an admitted fact generally, that the power inheres in a state for domestic uses only, to be exercised for the benefit of its own people, and cannot be extended merely to promote the public uses of a foreign state, * * * " Columbus Waterworks Co. v. Long, 121 Ala. 245, at 247, 25 So. 702 at 703 (1899).

In response to this argument, which seems to be that since the transmission line which may ultimately traverse Mr. Hilken's land will transport energy produced in North Dakota beyond the boundaries of the State of North Dakota for use in another state, the construction of the line is not for a lawful public use, Square Butte asserts that such an argument cannot be accepted as the modern view, in light of the trend of cases and the need for energy nationwide.

Square Butte refers to three cases and quotes therefrom.

The cases and the quotations follow:

"Thus, in Montana a public use is one which confers some benefit or advantage

to the public. Such public use is not confined to actual use by the public, but is measured in terms of the right of the public to use the proposed facilities for which condemnation is sought. As long as the public has the right of use, *whether exercised by one or many members of the public,* a 'public advantage' or 'public benefit' accrues sufficient to constitute a public use. This principle is aptly expressed in Nichols on Eminent Domain, 3rd Ed., V. 2, § 7.522[3], in the following language:

"'As long as every member of the public has an equal right with all others, on equal terms, to the use of the power produced, it matters not that every person is not actually benefited thereby.'

"Uses which serve a single person or a single enterprise have long been upheld as public uses in Montana if a 'public advantage' or 'public benefit' is derived." [Emphasis supplied by Square Butte.] Montana Power Company v. Bokma, 153 Mont. 390 at 395, 457 P.2d 769 at 772, 773 (1969).

"'"Public use" within the meaning of section 14 [Art. I of the California Constitution] is defined as a use which concerns *the whole community* or promotes the general interest in its relation to any legitimate object of government.'" [Emphasis supplied by Square Butte.] City of Menlo Park v. Artino, 151 Cal. App.2d 261, at 269, 311 P.2d 135 at 141 (1957).

"The words 'public use' are neither abstractly nor historically capable of complete definition. The words must be applied to the facts of each case in the *light of current conditions.*" [Emphasis supplied by Square Butte.] Miller v. City of Tacoma, 61 Wash.2d 374 at 384, 378 P.2d 464 at 470 (1963).

Square Butte believes a quotation from a 1959 Minnesota decision is particularly significant. It reads:

"We have also stated that the notion of what a public use may be changes with time. 'Public use expands with the new needs created by the advance of civilization and the modern tendency of the people to crowd into large cities. [Citations omitted.] We have also said that the term 'public use' is flexible and cannot be limited to concepts of public use or purpose held at the time of the forming of the constitution." Housing and Redevelopment Authority v. Greenman, 255 Minn. 396, at 404, 96 N.W.2d 673 at 679 (1959).

Square Butte asserts that none of the four cases referred to us by it, and neither State v. Barnes, 55 Idaho 578, 45 P.2d 293 (1935), nor Port of Umatilla v. Richmond, 212 Or. 596, 321 P.2d 338 (1957), nor the latter two cases referred to us by Hilken limit the concept of "public" to the inhabitants of a particular area, whether city, county, or state.

Because we believe that a determination of this issue is premature at this time, a condemnation action having not been commenced, and that it is better to delay a determination of what constitutes a public use until that issue has been more extensively briefed and considered by the trial court in conjunction with the condemnation action itself, we shall not attempt to determine this issue at this time.

Hilken's next contention is that at the hearing on the motion, no justification was given for this particular location; in other words, that no evidence was submitted to prove that the location was compatible with the greatest public benefit and the least private injury. It is Hilken's view that there is other land in the general area which is not tillable due to coal-strip operations, and that there is also State and Federally owned land over which the transmission line could be constructed, and that using this land would be more compatible with the greatest public benefit and the least private injury.

Square Butte asserts that this is also an argument that should be made if and when a condemnation action is commenced, and that accordingly a determination of this issue is also premature.

It is Square Butte's view that the survey and testing is a necessary preliminary to the condemnation action itself and that until the survey and testing are completed, it will not be in a position to determine the best route for the transmission line.

If a decision is made by Square Butte that the transmission line must be constructed over Hilken's land, Square Butte will then be required to commence a condemnation action and in that action it will be governed by what we said in Otter Tail Power Company v. Malme, 92 N.W.2d 514 at 521 (N.D.1958).

"Since a corporation vested with the right of acquiring property for a public use is entitled to much latitude in determining the extent of the property to be taken, it is entitled to the same latitude in determining the selection and location of the route for its power transmission line. Where it presents evidence showing the necessity for the taking of property for the construction of its transmission line, and such evidence indicates that the corporation vested with the power exercised good faith and used its best judgment in the selection of the route and the easements sought to be taken, and where it further appears from the evidence that the selection of the route is compatible with the greatest public benefit and the least private injury, this court, on appeal, will not disturb the trial court's findings that the plaintiff has established the necessity for the taking of the easements sought over the route selected.

"While under the laws of this state necessity must be established by evidence, such necessity need not signify an impossibility of constructing the improvement for which the power has been granted without taking the land in question, but merely requires that the land be reasonably suitable and useable for the improvement. Nichols on Eminent Domain, 3rd Ed, Volume 1, pages 391 and 392. The evidence need only show reasonable or practical necessity. 29 C.J.S. Eminent Domain § 90, page 886.

"The landowner may not object merely because some other location might have been made or some other property obtained that would have been as suitable for the purpose. 18 Am.Jur., Eminent Domain, Section 108, page 735; 29 C.J.S. Eminent Domain, § 91, page 887." Otter Tail Power Company v. Malme, supra, 92 N.W.2d 514 at 521.

■ We are inclined to agree with Square Butte that to require it to prove, prior to permitting it to survey and test Mr. Hilken's land, that his land would constitute a route most compatible with the greatest public benefit and the least private injury would be to require it to act prior to the ascertainment of the knowledge necessary to establish such a fact, and might also result in a useless act in the event that after survey and testing a decision were made not to traverse this land.

We are, accordingly, of the view that Square Butte made a sufficient showing through its affidavit to secure authorization to traverse Hilken's land for the purposes of survey and limited testing, and that the conditions imposed by the trial court should adequately protect Mr. Hilken in the event that any damage is done to his property.

For the purposes of entering the land for survey and limited testing, it is our view that Square Butte is required to show only that it was in the category of persons entitled to seek eminent domain, and that it was not required to prove that at that stage of the proceedings eminent domain was proper, justified, and necessary.

This conclusion is consistent with the view taken by the Court of Appeals of New York when it held the trial court and

the appellate division in error when they required a showing by a pipe-line corporation on its application for a permit to enter private property for a survey that it sought to take the property for a public use. The Court of Appeals said the lower courts erred in requiring the petitioner to prematurely establish that its line will serve a public use. See Northville Dock Pipe Line Corp. v. Fanning, 21 N.Y.2d 616, 289 N.Y. S.2d 963, 237 N.E.2d 220 at 222 (1968).

■ Since in its affidavit in support of its motion Square Butte demonstrated that it was a North Dakota electric cooperative corporation, duly organized under the laws of this State and authorized to do business herein; that it enjoyed the privileges granted to such a corporation, including the right of eminent domain; that it planned to construct an electric generating plant and power line for the transmission of electricity; that it was necessary to conduct surveys and testing to determine the probable routing of such a transmission line, Square Butte established a sufficient basis for an appropriate order permitting such a survey and limited testing under reasonable conditions and with reasonable protection to the landowner.

The trial court might well have set a bond for Mr. Hilken's protection; but inasmuch as there has been no showing made that Square Butte is judgment-proof, we conclude that the trial court's failure to require a bond is not a basis for setting aside its order.

Incidentally, Section 32–15–06, N.D.C.C., does not seem to require a bond. This, however, does not prevent the court from requiring a bond, just as it does not prevent the court from specifying other protective conditions, as it has done in the instant case.

Before we may dispose of this case we must consider the constitutional issue raised by Mr. Hilken.

■ Hilken seems to contend that his constitutional rights were denied him by the trial court's failure to make a record of the hearing and by the trial court's refusal to grant an injunction against the entry upon his lands by Square Butte.

He refers us to Section 27–06–03, N.D. C.C. It reads:

"27–06–03. Duties of district court reporters.—Each district court reporter shall attend the district court sessions within or without the district whenever the judge appointing him shall so direct and shall take in shorthand all testimony given orally by the witnesses, all objections and rulings made and exceptions taken, any instructions given orally by the court, and all other proceedings at the hearing or trial not otherwise reduced to writing. District court reporters shall perform such other duties as the appointing district court judge may designate." N.D.C.C.

Square Butte contends that the failure on the part of the court to require the court reporter to make a record so it ultimately could be transcribed is not a fatal defect requiring a remand.

Square Butte refers us to Section 28–27–07, N.D.C.C., which reads:

"28–27–07. Record on appeal.—Upon appeal the record must contain:

\*　　\*　　\*　　\*　　\*　　\*

"2. From an order, the original papers used by each party on the application therefor, the reporter's minutes, *if any,* duly transcribed, and the evidence upon which such order is based, duly certified as correct by the trial judge. Such record shall be duly authenticated and transmitted by the clerk of the district court.

"Whenever, for any purpose, copies of papers in the judgment roll or record are required, pursuant to order of the district judge, to be transmitted instead of the original, such copies must be plainly typewritten, double spaced, and on good paper with the pages thereof consecu-

tively numbered." [Emphasis added.] N.D.C.C.

It asserts that this section contemplates that there may be instances when there are no court reporter's minutes and that the section does not impose a requirement that the court reporter take such minutes unless ordered to do so by the court or requested by one of the parties. It is Square Butte's view that Section 27–06–03, N.D.C.C., relates to the taking of testimony and objections and rulings relative thereto. This argument would be stronger were it not for the latter part of Section 27–06–03, N.D.C.C., which seems to require that the court reporter take in shorthand all other proceedings at the hearing or trial not otherwise reduced to writing.

We do, however, agree with Square Butte in its contention that in the absence of Hilken's failure to request that a record be made of the proceedings in the instant case, which we understand consist mainly of oral arguments on the part of counsel and perhaps oral motions made on behalf of counsel, that a mere failure on the part of the court reporter to make this record does not justify a reversal of the trial court's order, nor does it necessitate a remand for a rehearing.

To avoid a situation in the future such as occurred here, apparently, where counsel for Hilken assumed that the court reporter was making a record when in fact he was not, we recommend that the court reporter's association take under consideration the possible adoption of a rule of procedure to be practiced by its members which would have as its objective alerting counsel to the occasions when a court reporter may be present in the courtroom during a proceeding and still not be making a record, so that a proper and timely request for the making of a record may be made by counsel.

. Hilken's further contention is that he has been denied his constitutional rights in that he has been denied protections to which he is entitled under Sections 1, 14, 20, and 22 of the North Dakota Constitution. He does not in any way attempt to demonstrate further how these sections of our State Constitution apply, and we are unable to apprehend how they could apply in any way which would justify a reversal of the trial court's order.

For the reasons stated in this opinion, the order of the district court is affirmed.

VOGEL, TEIGEN, PAULSON and KNUDSON, JJ., concur.