CREEK RANCH, INC., PLAINTIFF-APPELLANT, v. NEW JERSEY TURNPIKE AUTHORITY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 11, 1976—Decided June 2, 1976.

**1**

2

Before Judges HALPERN, CRANE and MICHELS.

*Mr. Daniel J. Carluccio* argued the cause for appellant (*Messrs. Citta, Carluccio & Holzapfel,* attorneys).

*Mr. Bernard M. Reilly* argued the cause for respondent (*Mr. Herbert I. Olarsch,* attorney).

PER CURIAM. This is an appeal from a summary judgment entered in favor of defendant dismissing plaintiff's complaint. The facts were not in serious dispute and the matter was ripe for disposition by the summary judgment route. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67 (1954).

Peter A. Mattia, right of way manager for the New Jersey Turnpike Authority (Authority), wrote a letter to plaintiff (as well as to many other property owners), dated November 12, 1973, notifying it that its property would be affected by and needed for the construction of the contemplated "Alfred E. Driscoll Expressway" no later than April 1, 1974. The letter enclosed a right of entry permit and made reference to certain financial benefits by way of interest and taxes that could accrue to plaintiff under the permit.

On or about November 20, 1973 plaintiff executed and delivered to the Authority the right of entry permit which in relevant part granted the Authority "an irrevocable right to enter upon the lands hereinafter described in order to carry out the construction program of the Authority; to include but not be limited to surveys, clearing, grading, drainage and the erection of structures or other improvements." The provision for payment provided:

The Authority agrees to pay interest, at the rate of 8%, on the value of the lands herein described, as ultimately agreed upon, either by negotiations, resulting in an Agreement To Convey; or the results of the ultimate award in condemnation; between the time of execution of this Right of Entry Permit and the time possession ceases; or the Authority and the Owner enter into a contract of purchase; or, in the alternate, the Authority institutes condemnation proceedings.

The right of entry permit was not executed by or on behalf of the Authority. It is also undisputed that the Authority did not utilize the permission given to clear, grade, drain, erect structures or make other improvements on plaintiff's lands, or in any way do physical damage thereto. The parties never negotiated for a sale nor was condemnation commenced or possession ever taken.

By letter dated November 27, 1974, the Authority's attorney advised plaintiff's attorney, among other things, that

because of legal and executive developments[1] the Expressway project could not proceed and it was advisable to void the right of entry permit. Shortly thereafter this suit, alleging a breach of contract, was instituted wherein plaintiff sought money damages for the interest and taxes allegedly due under the right of entry permit, as well as damages suffered for its inability to develop or otherwise use its property.

The trial judge heard cross-motions for summary judgment and, without clearly expressing his views, dismissed the complaint and directed the Authority to give plaintiff a formal release from the right of entry permit. Normally, we would remand the matter to the trial judge for findings of fact, and have him state his conclusions of law, as required by *R.* 1:7-4 and *R.* 4:46-2. However, as previously indicated, since the facts are not in dispute we deem it advisable to dispose of the appeal on the merits as provided for by *R.* 2:10-5.

The transactions between plaintiff and the Authority amounted to nothing more than an unexecuted revocable license upon which plaintiff could not predicate a suit for money damages. See *Jersey City Merchants Council v. Jersey City,* 39 *N. J.* 42, 50 (1962). Without passing upon plaintiff's failure to offer proofs on the motion as to Mattia's authority to write the letter of November 12, 1973 and enclose the right of entry permit, or the effect of the Authority's failure to execute anything in writing (see *N. J. S. A.* 27:23-3), we are satisfied no binding agreement ever came into being. The provisions in the right of entry permit for the payment of 8% interest and taxes were contingent upon the parties either voluntarily agreeing upon a price for a conveyance or having such price fixed by condemnation.

---

[1] Counsel was undoubtedly referring to Governor Byrne's strong objections to the project and this court's holding in *South Brunswick Tp. v. N. J. Turnpike Auth.,* 129 *N. J. Super.* 126 (App. Div. 1974), certif. den. 66 *N. J.* 334 (1974).

Since neither contingency materialized, no enforceable contract existed. At best, the right of entry permit was an offer by plaintiff which was never accepted by the Authority. Under such circumstances, plaintiff could have withdrawn its offer or permit at any time and utilized its property to suit its own purposes. See *American Handkerchief Corp. v. Frannat Realty Co.,* 17 *N. J.* 12, 17 (1954).

■ Furthermore, the right of entry permit only gave the Authority permission to enter upon appellant's lands preparatory to commencing condemnation or consummating an agreement to purchase — the same right the Authority is given without such a permit merely upon giving a written ten day notice to the owner of the property under *N. J. S. A.* 20:3–16. If, after a preliminary entry is made, condemnation is not commenced within two years, provision is made in the statute for the payment of any damage resulting from such preliminary entry.

■ We perceive nothing invidious about the Authority's actions which warrant the conclusion that it acted unfairly or in an underhanded way. Firstly, the entry permit gave it only the permission to do what the statute authorized. Secondly, it has long been the rule that one having a right to condemn could enter on property, in good faith, to make preliminary surveys and plans as a necessary incident to the right to condemn. See 29A *C. J. S. Eminent Domain* § 226 at 1020. Such preliminary entry, even if injury to the land results, does not always give rise to a cause of action for damages. *Jahr, Law of Eminent Domain, Valuation and Procedure,* § 57 at 82 (1953), states the rule thusly:

In most states, prior to the condemnation of the particular property in question, the condemnor generally is given the right by statute to enter upon property for the purposes of making surveys, test borings and similar examinations. Such occupation of a temporary nature may be authorized by law provided no injury is caused to the private property owner; and provided further that within a reasonable time thereafter the condemnor actually condemns the property for public use. Any damage or injury to the property done during the temporary occupation, of course, is compensable but not

in the condemnation proceeding. It is an action outside of the condemnation proceeding for such injury to real property. Furthermore, such temporary occupation must be of such a nature as to not constitute any appreciable interference with the possession of the land.

For such interference a distinction however must be made between compensable injuries and those for which no award may be made and no damages may be claimed, the latter part being injuries which have sometimes been denominated by the courts as those injuries or inconveniences which every owner of property must pay as a member of the community. In the course of the prosecution of a public project the street sometimes may be ripped up and made unpassable for a period of time; in the construction of a railroad crossing, access to one's property may be interfered with; in the construction of a bridge over a stream there may be some temporary diversion of water from the stream. All these mentioned, of course, are generally not compensable. They constitute the price one is required to pay for living in a civilized community.

See also, *Kingston East Realty Co. v. State of New Jersey,* 133 *N. J. Super.* 234 (App. Div. 1975); *Northville Dock Pipe Line Corp. v. Fanning,* 21 *N. Y.* 2d 616, 237 *N. E.* 2d 220 (Ct. App. 1968); *Thomas v. City of Horse Cave,* 249 *Ky.* 713, 61 *S. W.* 2d 601 (Ct. App. 1933).

In light of our determination that no enforceable contract existed, we need not pass upon the other issues raised.

Affirmed.

CRANE, J. A. D. (dissenting). I respectfully dissent from the views of my colleagues. Without finding the facts and stating its conclusions, as is required by *R.* 4:46-2 and *R.* 1:7-4, the trial judge granted summary judgment dismissing plaintiff's complaint for damages predicated upon an alleged agreement between plaintiff and the New Jersey Turnpike Authority.

In my view, the behavior of the Turnpike Authority in soliciting a right of entry permit in return for a promise of payment of taxes and interest, followed by a repudiation of that promise, borders on the unconscionable. The owners of property are entitled to expect a higher standard of dealing with a public entity such as the Turnpike Authority.

When the faith of a public agency is pledged, that pledge ought to be respected. *Cf. State v. Ashby*, 43 *N. J.* 273, 278 (1964). I cannot see how, as the majority concludes, the right of entry permit can be characterized as an offer when, by its terms for a stated consideration, it grants the right to enter upon the plaintiff's lands. I cannot see how the grant can be termed revocable when by its language, as drawn by the Turnpike Authority, it is stated to be irrevocable. Nor do I agree that the permit was unexecuted in view of the presence of the signatures of the president and secretary of the plaintiff corporation accompanied by an acknowledgment and a resolution of plaintiff's board of directors.

The exchange of writings between the parties should receive a reasonable construction in accordance with the intention of the parties. *Empire Rubber Mfg. Co. v. Morris*, 73 *N. J. L.* 602, 610 (E. & A. 1906). If any ambiguities exist, the documents must be construed most strongly against the party who prepared them and chose the language employed. *Moses v. Edward H. Ellis, Inc.*, 4 *N. J.* 315 (1950). A public agency such as the Turnpike Authority is not immune from these principles of construction. *Terminal Const. Corp. v. Bergen Cty. etc., Dist. Auth.*, 18 *N. J.* 294 (1955). In such a light, the letter of November 12, 1973 from Peter A. Mattia, right of way manager of the Turnpike Authority, expresses an offer to pay taxes and interest if plaintiff should execute the tendered right of entry permit. Plaintiff's execution of the agreement and return to Mattia constituted an acceptance of the offer. At that point a contract sprung into being. *Al–Sco Realty Co. v. Suburban Apt. Corp.*, 138 *N. J. Eq.* 497 (Ch. 1946), aff'd 141 *N. J. Eq.* 40 (E. & A. 1947); *Hardy v. Hangen*, 134 *N. J. Eq.* 176, 181 (Ch. 1943).

The only possibly discernible legal barrier to the enforcement of the contract, in view of the fact that an interest in real property is involved, is the statute of frauds, *N. J. S. A.* 25:1–5(d). It is by no means certain, however, that

the statute completely bars plaintiff's cause of action. The letter of November 12, 1973 might well be construed as such a writing as would satisfy the statute. See *Herzog v. Tidaback*, 67 *N. J. Super.* 14, 18 (Ch. Div. 1961). The Turnpike Authority does not deny that Mattia was empowered to act in its behalf, nor does it contend that the acquisition of a right of entry to plaintiff's land lacked its approval.

The trial judge was aware that a number of other property owners were in a similar position vis-à-vis the Turnpike Authority, as is evidenced by the companion cases of *Boyarin v. N. J. Turnpike Authority* (A–411–75) and *Weidenfeld v. N. J. Turnpike Auth.* (A–412–75), 75 *N. J.* 421. In my view, it was inappropriate to grant summary judgment on such a meager record when the ruling would have a broad-reaching effect on the relationship between the owners of property and a major instrumentality of the State. See *Jackson v. Muhlenberg Hospital,* 53 *N. J.* 138, 141–142 (1969). I see no merit to defendant's argument based on the principles of frustration of purpose. While the Turnpike Authority was prevented from construction of the highway it proposed to construct across plaintiff's land, *South Brunswick Tp. v. N. J. Turnpike Auth.,* 129 *N. J. Super.* 126 (App. Div. 1974), certif. den. 66 *N. J.* 334 (1974), it was not prevented from paying the sums it had agreed to pay for the right of entry permit.

I would reverse and remand for a plenary trial on all issues.