Ralph R. POGUE and Ruth Pogue,
Plaintiffs–Appellants,

v.

KAMO ELECTRIC COOPERATIVE,
INC., Defendant–Respondent.

No. 16566.

Missouri Court of Appeals,
Southern District,
Division Two.

July 31, 1990.

Motion for Rehearing or to Transfer to Supreme Court Denied
Aug. 21, 1990.

Application to Transfer Denied
Oct. 16, 1990.

David C. Ruyle, Ruyle and Sims, Neosho, for plaintiffs-appellants.

Jot Hartley, Rorschach, Pitcher, Castor, Hartley & Jones, Vinita, Okl., and William H. McDonald and John F. Appelquist, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendant-respondent.

MAUS, Judge.

Plaintiffs Ralph R. Pogue and Ruth Pogue were granted a judgment against KAMO Electric Cooperative, Inc. ("KAMO") for cutting trees in making a pre-condemnation survey across 43 acres owned by the plaintiffs. The jury assessed the plaintiffs' actual damages at $288.67 and their punitive damages at $60,585.00. The trial court sustained KAMO's Motion for Judgment Notwithstanding the Verdict as to the punitive damages. The plaintiffs state one point on appeal. The following is an outline of the facts sufficient for consideration of that point.

Associated Electric Cooperative, Inc. ("Associated") determined to build a 345 kv electric transmission line approximately 115 miles in length from the Arkansas line to approximately 30 miles north of Springfield. The route of that transmission line was across 43 acres in rural McDonald County owned by the plaintiffs. That tract was unimproved and heavily wooded, including some commercial timber.

By contract, Associated employed KAMO to build that transmission line. In turn, KAMO employed Allgeier Martin and Associates, Inc. ("Allgeier") as engineers for that construction project. The duties of Allgeier included making a survey to stake the center line of an easement 150 feet in width for the construction of that transmission line and to determine the legal description of that easement.

KAMO was aware of the law of this state as established in *State ex rel. Rhodes v. Crouch*, 621 S.W.2d 47 (Mo. banc 1981). Nevertheless, it was the policy of KAMO to contact those owning land over which a survey was to be made to inform those owners of the impending survey and construction and, hopefully, gain permission to make the survey. It was said to be an attempt to maintain peace. On or about April 25, 1986, Darrell Wilson, right-of-way

agent for KAMO, contacted plaintiff Ralph Pogue concerning a survey and construction across the 43 acres. The plaintiffs valued that tract as a "timber management project". Ralph Pogue was disturbed by the proposed survey and construction. Wilson and Ralph Pogue discussed the survey. Plaintiff Ralph Pogue testified that he granted permission for the survey to be made upon condition no merchantable timber was cut. Wilson understood that permission had been granted upon condition that merchantable timber was to be cut only to the extent necessary.

Wilson informed Allgeier of his discussion with Pogue. Sometime before May 1, 1986, the crew of Allgeier made a survey across the 43 acres. In doing so, they cut a line of sight 4 feet in width along the center line of the proposed easement. As a result, numerous trees were cut, many of which were of merchantable quality. All the trees cut were within the proposed construction easement.

Witnesses for the defendants testified it was necessary to cut the trees to make an acceptable survey. They further testified that a survey made by the random traverse or offset method would be impractical, would be inaccurate and not permit staking the center line. Further, a survey by that method would not avoid cutting trees, but would result in cutting more trees, including trees not within the construction easement. A witness for the plaintiffs testified the center line could have been established by a survey using the random traverse or offset method. He admitted a survey made by that method would nevertheless require that some trees be cut. He also said that if he had legal permission he would use the more accurate method of clearing a line of sight for the center line. Plaintiff Ralph Pogue testified the value of the 43-acre tract before the survey was $20,000.00 and after the survey $19,000.00. An appraiser called by defendant KAMO testified the value of the tract before and after the survey was $12,900.00.

Plaintiffs' petition sought recovery against Allgeier for the intentional cutting of timber "for purposes of conducting a survey and intentionally and without just cause or excuse cut numerous trees belonging to plaintiffs in violation of Plaintiff Ralph Pogue's expressed instructions and license to Darrell Wilson." The petition sought recovery against KAMO and Associated on the basis of respondeat superior. The jury returned a verdict in favor of defendants Allgeier and Associated. As stated, the jury returned a verdict against KAMO for $288.67 in actual damages and $60,585.00 in punitive damages. Also as stated, the trial court sustained KAMO's Motion for Judgment Notwithstanding the Verdict as to the punitive damages.

The plaintiffs' sole point on appeal is "[t]he trial court erred in sustaining respondent KAMO's Motion for Judgment Notwithstanding the Verdict for punitive damages because there was substantial evidence of respondent KAMO's outrageous conduct in that KAMO was *recklessly indifferent to appellants' permission* to conduct a preliminary centerline survey on condition that no merchantable trees be cut." (Emphasis added.) That point must be considered against the background of the law pertaining to precondemnation surveys and punitive damages.

It is established in this state that a party holding the power of eminent domain has the right to enter the property of another to make a pre-condemnation survey and, in doing so, is not a trespasser.

> "Accordingly, pre-condemnation surveying is not only necessary to the exercise of the right of eminent domain, it is a part of eminent domain. The right of eminent domain is virtually useless to an entity without the right to survey, and that right must be available before the beginning of condemnation proceedings." *State ex rel. Rhodes v. Crouch*, 621 S.W.2d at 48.

In conclusion, the court added: "[I]t would make little sense that the legislature would grant the power of eminent domain to an entity and at the same time deny the entity the means required to use the grant." *Id.* at 49.

Associated and KAMO possessed the power to condemn an easement for the

construction of an electric transmission line across the plaintiffs' property. § 394.080. Accordingly, those entities and their agent Allgeier had the right to enter that property for the purpose of making the pre-condemnation survey. However, that right is not carte blanche authority to conduct that survey by any means and in any manner free of responsibility. An early case had declared that statutory pre-condemnation surveys are

> "subject to this limitation, that they are reasonably necessary to accomplish a lawful purpose, are but temporary in their character, and are accompanied with no unnecessary damage." *Walther v. Warner*, 25 Mo. 277, 289 (1857).

An eminent text observes:

> "A momentary entry for the purpose of a survey is not considered a taking, and may be authorized without compensation whether the survey is preliminary to some public work or is for any other public purpose. There is authority in support of the proposition that even in the absence of an authorizing statute a temporary entry for such purpose constitutes neither a taking nor a trespass. Where, however, in the course of such an entry, unreasonable damage is inflicted, liability may ensue." Nichols on Eminent Domain, 3d Ed. Vol. 2, § 6.02.

The scope of a statutory right to a pre-condemnation survey has been expressed in the following terms:

> "The order ought not to be read, however, as authorizing any cutting of trees or damage to crops, except insofar as these are unavoidable incidents (for which the county must pay damages) of permissible preliminary surveying." County of Kane v. Elmhurst Nat. Bank, 111 Ill.App.3d 292, 67 Ill.Dec. 25, 443 N.E.2d 1149, 1154 (1982). (Authorities omitted.)

Also see *Creek Ranch, Inc. v. New Jersey Turnpike Authority*, 156 N.J.Super. 1, 383 A.2d 148 (1976) and *Oglethorpe Power Corp. v. Goss*, 253 Ga. 644, 322 S.E.2d 887 (1984).

■ This court understands *State ex rel. Rhodes v. Crouch*, *supra*, to declare that the right to enter includes the right to do what is reasonable under the circumstances to make a pre-condemnation survey. Under that declaration, a pre-condemnation survey should not result in the destruction of a dwelling. Nor should it be accomplished by cutting a 100–year–old walnut tree in the middle of a field of 40 acres. However, clearing a line of sight through a heavily-wooded and brushy acreage may or may not be reasonably necessary. It is neither feasible nor necessary to attempt to list or categorize acts that are unreasonable in making a pre-condemnation survey. It is sufficient to observe that such a survey must be necessary to a condemnation that is planned and anticipated in good faith. It must be made in a manner that is both necessary and reasonable. Even when a pre-condemnation survey is made in that manner, the condemning authority is liable for any damages inflicted. It was on the basis of those propositions the plaintiffs' petition was held to state a cause of action and their recovery of actual damages is predicated. *Pogue v. Associated Elec. Co-op., Inc.*, 760 S.W.2d 169 (Mo.App. 1988).

■ Punitive damages are recoverable only when there is evidence to support an award under the following standards.

> "Justified as punishment and intended to make an example of a defendant on account of his outrageous conduct, punitive damages require a showing of a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or reckless disregard (from which evil motive is inferred) for an act's consequences. 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or *reckless indifference to the rights of others*.' Restatement (Second) of Torts, § 908(2) (1979)." *Burnett v. Griffith*, 769 S.W.2d 780, 787 (Mo. banc 1989). (Footnote omitted.) (Emphasis added.)

The action of the trial court granting KAMO's motion for judgment notwithstanding the verdict on the issue of punitive damages was a determination there

was no evidence to meet the foregoing standard and submit that issue. In attacking that action, the Rules require the plaintiffs' point on appeal to state "wherein and why" that action was erroneous. Rule 84.-04(d); *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978). In stating a point that a trial court erred in granting such a motion for judgment notwithstanding the verdict, an "appellant needs to state his theory of liability and set out concisely a brief summary of the evidence that supports it." *Robinson v. Laclede Gas Co.,* 553 S.W.2d 495, 496–497 (Mo.App.1977).

The scope of review by this Court is limited.

"We take and consider the case solely upon the questions presented by the appellant: other issues were developed during the trial, but they have not been briefed and are therefore considered abandoned or waived and no longer in the case." *Hough v. Jay–Dee Realty and Investment, Inc.,* 401 S.W.2d 545, 549 (Mo.App.1966).

█ Under these precepts and the plaintiffs' point on appeal, it is not necessary to consider if KAMO acted with reckless indifference to the plaintiffs' rights to have the pre-condemnation survey accomplished subject to the limitations and in the manner above outlined. That issue was not submitted to the jury. As noted, the plaintiffs' sole point is "that KAMO was recklessly indifferent to appellants' permission to conduct a preliminary centerline survey on condition that no merchantable trees be cut." The plaintiffs had no right to deny KAMO entry for the pre-condemnation survey and no right to make that entry dependent upon a condition they imposed. The point on appeal does not state a theory and outline evidence to meet the standard of *Burnett.* The point is denied and the judgment is affirmed.

FLANIGAN, P.J., and SHRUM, J., concur.