2016 ND 165

In re 2015 APPLICATION FOR PERMIT TO ENTER LAND FOR SURVEYS AND EXAMINATION ASSOCIATED WITH A PROPOSED NORTH DAKOTA DIVERSION AND ASSOCIATED STRUCTURES.

Cass County Joint Water Resource District, Plaintiff and Appellee

v.

Steven Brakke; Colleen Brakke; Dorothy V. Brakke, as trustee of the Dorothy V. Brakke Revocable Living Trust under agreement dated April 3, 1980, as amended and as beneficiary and possible successor Trustee of the H. Donald Brakke Revocable Living Trust under agreement dated July 28, 1977, as amended; Paul E. Brakke; and H. Donald Brakke; K–F Farm Partnership; Christopher Narum; and Jeanne D. Narum, Defendants.

Steven Brakke; Colleen Brakke; Dorothy V. Brakke, as trustee of the Dorothy V. Brakke Revocable Living Trust under agreement dated April 3, 1980, as amended and as beneficiary and possible successor Trustee of the H. Donald Brakke Revocable Living Trust under agreement dated July 28, 1977, as amended; Paul E. Brakke; and H. Donald Brakke, Appellants.

In re 2015 Application for Permit to Enter Land for Surveys and Examination Associated with a Proposed North Dakota Diversion and Associated Structures.

Cass County Joint Water Resource District, Plaintiff and Appellee

v.

Glen Libbrecht; Danyeal Barta; Vance Barta; Laurie Brakke; Michael Brakke; Marilyn G. Libbrecht and Glen Libbrecht, Co–Trustees of the Catherine Libbrecht Trust; Annette Delaney; David Delaney; Derek S. Flaten; Micheal Fosse; Merry Lou Haakson; Kenneth W. Hatlestad; David Houkom; Douglas W. Johnson; Jeffrey K. Johnson; Martin Johnson; Douglas Kummer; Jacalyn Kummer; Jon Larson; Julie Larson; Brian T. Leiseth; Timothy J. Leiseth; Glen Libbrecht; Marilyn G. Libbrecht; Nancy Loberg; David L. Lotzer; James Martin; Marlys Martin; Anne Miller; Collin Miller; Roger Miller; Mari Palm and Robert Helbling, Co–Trustees of the MKRM Trust; Kelly Pergande; Kristie Sauvageau; Terry Sauvageau; Alan and Barbara Thunberg, Co–Trustees of the Thunberg Living Trust; Kristine Valan; Orlen Valan, Jr.; Western Trust Company; Kayla M. Woodley, Defendants.

Mari Palm and Robert Helbling, Co–Trustees of the MKRM Trust; Michael Brakke; and Laurie Brakke, Appellants.

Nos. 20150311, 20150312.

Supreme Court of North Dakota.

Aug. 18, 2016.

Christopher M. McShane (argued) and Andrew D. Cook (on brief), West Fargo, ND, for plaintiff and appellee.

Jonathan T. Garaas, Fargo, ND, for defendants and appellants.

CROTHERS, Justice.

[¶ 1] In this consolidated appeal several landowners appeal from district court orders granting the Cass County Joint Water Resource District (District) permission to enter Landowners' property. The Landowners argue that the district courts lacked subject matter jurisdiction over the cases because the District failed to serve a summons and complaint, that soil borings and other tests are outside the scope of permitted examinations and they were entitled to a jury trial to determine just compensation. We affirm the district courts' orders.

I

[¶ 2] The District filed applications with the district court for permission to enter Landowners' property to conduct surveys, mapping and examinations required for evaluating and designing a proposed flood control project. The District stated the examinations and surveys may include drilling holes on certain properties to obtain subsurface soil samples. The Landowners objected, claiming the court was without jurisdiction to hear the applications. The Landowners claimed the District's proposed entry onto their property constituted a taking of private property under the North Dakota Constitution and the District should not be allowed the right to enter their property to conduct examinations and surveys until a jury determined appropriate compensation. After hearings the district courts granted the District permission to enter the Landowners' property and the Landowners appeal.

II

[¶ 3] The Landowners argue the district courts erred granting the District permission to enter their property because the courts were without jurisdiction to hear the applications. "To issue a valid order, a district court must have both subject-matter jurisdiction and personal jurisdiction over the parties." *Alliance Pipeline L.P. v. Smith*, 2013 ND 117, ¶ 18, 833 N.W.2d 464. "Subject-matter jurisdiction is the court's power to hear and determine the general subject involved in the action...." *Albrecht v. Metro Area Ambulance*, 1998 ND 132, ¶ 10, 580 N.W.2d 583. "Issues involving subject matter jurisdiction cannot be waived and can be raised sua sponte at any time." *Earnest v. Garcia*, 1999 ND 196, ¶ 7, 601 N.W.2d 260.

[¶ 4] "For subject-matter jurisdiction to attach, 'the particular issue to be determined must be properly brought before the court in the particular proceeding.'" *Albrecht*, 1998 ND 132, ¶ 11, 580 N.W.2d 583. North Dakota Rules of Civil Procedure 12(h)(3) compels the district court to dismiss an action whenever it appears the court lacks jurisdiction of the

subject matter. "When jurisdictional facts are not disputed, the issue of subject matter jurisdiction is a question of law, which we review de novo." *In re Estate of Vaage*, 2016 ND 32, ¶ 14, 875 N.W.2d 527.

■ [¶ 5] The Landowners allege the North Dakota Rules of Civil Procedure required the District to commence the actions by serving eminent domain summons and complaints before the district courts could obtain jurisdiction. We disagree. The District sought permits to enter land under N.D.C.C. ch. 32–15 relating to eminent domain. "Except as otherwise provided ... the provisions of the North Dakota Rules of Civil Procedure are applicable to and constitute the rules of practice in the proceedings mentioned in this chapter." N.D.C.C. § 32–15–33. Rule 81(a), N.D.R.Civ.P., Table A, contains "a nonexclusive list of statutes pertaining to special statutory proceedings." Chapter 32–15, N.D.C.C., is included in N.D.R.Civ.P. 81(a), Table A. These special statutory proceedings "are excluded from [the] rules to the extent they are inconsistent or in conflict with the procedure and practice provided by these rules." N.D.R.Civ.P. Rule 81(a).

■ [¶ 6] "[A] proceeding for a court order authorizing examinations and surveys under N.D.C.C. § 32–15–06 is 'preliminary to the condemnation action itself' and is not a condemnation proceeding." *Alliance Pipeline L.P. v. Smith*, 2013 ND 117, ¶ 15, 833 N.W.2d 464 (quoting *Square Butte Elec. Co-op. v. Dohn*, 219 N.W.2d 877, 883 (N.D.1974)). Because a proceeding under N.D.C.C. § 32–15–06 is preliminary to condemnation, an eminent domain summons and complaint are not required. This is consistent with N.D.R.Civ.P. 81(a), Table A, stating N.D.C.C. ch. 32–15 is a special statutory proceeding exempt from the North Dakota Rules of Civil Procedure. Because the District was not re-

quired to commence these actions by service of a summons, the district courts did not lack subject matter jurisdiction over the District's applications for permits to enter the Landowner's property.

## III

■ [¶ 7] The Landowners argue soil borings and other tests are beyond the scope of the examinations permitted by N.D.C.C. § 32–15–06.

"Statutory interpretation is a question of law subject to full review upon appeal. *Estate of Kimbrell*, 2005 ND 107, ¶ 9, 697 N.W.2d 315 (internal quotation marks and citation omitted). Under N.D.C.C. § 1–02–02, [w]ords used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained. We construe statutes as a whole and harmonize them to give meaning to related provisions. *See* N.D.C.C. §§ 1–02–01 and 1–02–02."

*Mattern v. Frank J. Mattern Estate*, 2015 ND 155, ¶ 10, 864 N.W.2d 458 (internal quotation marks omitted).

[¶ 8] The District filed applications for permits to enter land under N.D.C.C. § 32–15–06, which provides:

"In all cases when land is required for public use, the person or corporation ... in charge of such use may survey and locate the same, but it must be located in the manner which will be compatible with the greatest public benefit and the least private injury and subject to the provisions of section 32–15–21. Whoever is in charge of such public use may enter upon the land and make examinations, surveys, and maps thereof, and such entry constitutes no claim for relief in favor of the owner of the land except

for injuries resulting from negligence, wantonness, or malice."

[¶ 9] The District's applications stated it "must bore a limited number of holes on certain properties to obtain subsurface soil samples." At the August 2015 hearings the District's attorney stated that there may be two borings per quarter section of property and each boring would remove about one or two pints of soil for testing. The District proposed to pay $250 for each hole bored and the holes would be filled in after removing enough soil for testing. The District described the soil borings in affidavits supporting its applications:

> "To obtain the information necessary to complete the geotechnical evaluation report, the geotechnical engineer must obtain soil borings on certain properties. The method for obtaining soil borings is called 'penetration test borings.' They are typically drilled with truck or track mounted core auger drills, equipped with hollow-stem augers. Depending on the type of samples needed and what testing is required, the borings may vary in depth. The hollow-stem augers use a thin-walled tube to take samples at varying depths or intervals, at the discretion of the geotechnical engineer. Bulk samples from the material removed from the borings may also be taken.

> "Soil borings will have minimal, if any, impact on existing trees. The bore holes are sited as close as possible to where levees, diversion channels, roads, bridges, or other flood control structures that require structurally-stable soils may be built. Soil boring holes are typically 6–8 inches in diameter and 60–90 feet deep. Soil removed from the hole will be predominantly returned to the bore hole, with the majority of remaining excess soil removed from the site. The holes will be filled with bentonite clay (expansive clay material) if condi-

tions indicate influence or impact to subsurface aquifers. The soil boring sites will be restored to their existing condition If [sic] necessary, the boring sites at the surface can be restored with new top soil and seeding in the spring."

[¶ 10] In granting the permits the district courts cited *Square Butte Elec. Co-op. v. Dohn*, 219 N.W.2d 877 (N.D.1974). In *Square Butte* a district court order granted an electric cooperative permission to enter private lands to conduct "soil testing and ground-resisting measurements, pursuant to Section 32–15–06, N.D.C.C." *Id.* at 879. We held the electric cooperative "made a sufficient showing through its affidavit to secure authorization to traverse [the landowner's property] for the purposes of survey and limited testing, and that the conditions imposed by the trial court should adequately protect [the landowner] in the event that any damage is done to his property." *Id.* at 883.

[¶ 11] Here, the district court in the *Brakke* matter found the proposed soil borings "are minimally invasive and will result in approximately a pint of soil being removed from each boring site, which can later be replaced after the testing is completed." Similar to *Square Butte*, here the district courts in both cases restricted the District's right to enter:

> "No buildings are to be entered or damaged, or trees cut, on Respondents' property without consent of the landowner or further order of the Court;

> "Applicant shall pay Respondents the sum of $250 for each soil boring completed on the property for purposes of the geotechnical surveys;

> "The Respondents' property is to be returned, as nearly as practicable, to its original condition, and any damages caused to the Property by Applicant's entry are to be repaired or fair compensation paid to Respondents.

"Applicant will provide at least 48–hour advance notice of its intention to enter upon the property by giving such notice either in writing or personal contact with Respondents. Such notice will include the name of the entity making such entry and the person in charge of the surveying, examination, mapping, or testing to be completed.

"Applicant shall indemnify and hold Respondents harmless from any and all claims, losses, or damages."

See Square Butte, 219 N.W.2d at 884 (noting the district court placed "other protective conditions" on the electric cooperative's right to enter).

[¶ 12] The statute permitting examinations is construed giving the words their plain, ordinary and commonly understood meaning. Sanderson v. Walsh Cty., 2006 ND 83, ¶ 16, 712 N.W.2d 842. An "examination" is defined as "a means or method of examining;" an "investigation;" an "inspection;" or an "inquiry." See Webster's New World Dictionary of the American Language (2d College Ed.1980). "Examine" means "to look at or into critically or methodically in order to find out the facts, condition, etc. of." Id. The definition of "examination" is not strictly limited to a visual examination.

[¶ 13] The Landowners' argument implies the proposed soil borings constitute a taking because they are not within the scope of permitted N.D.C.C. § 32–15–06 examinations. Courts analyze regulatory takings using primary factors including:

"[T]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the governmental action—for instance whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good."

Wild Rice River Estates v. City of Fargo, 2005 ND 193, ¶ 13, 705 N.W.2d 850 (quoting Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)) (internal quotation marks omitted).

"This Court has ... adopted the parcel-as-a-whole rule, relying upon Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 497, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) (quoting Penn Central, 438 U.S. 104, 130–31, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)), for the proposition that '[i]n determining whether a restriction constitutes a taking, courts look to the effect of the restriction on the parcel of land as a whole, rather than to the effect on individual interests in the land.' "

Wild Rice River Estates v. City of Fargo, 2005 ND 193, ¶ 17, 705 N.W.2d 850 (citing Grand Forks–Traill Water Users, Inc. v. Hjelle, 413 N.W.2d 344, 346 (N.D.1987)).

[¶ 14] The District's proposed soil borings test the condition of the soil on the Landowners' properties for the public purpose of evaluating and designing a flood control project proposal. The soil boring proposed here is an "examination" as described by N.D.C.C. § 32–15–06. Although the proposed soil borings penetrate the ground's surface, the testing is nevertheless minimally invasive, or "limited." Square Butte, 219 N.W.2d at 883. Removing one to two pints of soil for testing and replacing the soil after testing does not constitute a compensable taking. The proposed soil borings are within the scope of the "examinations" allowed under N.D.C.C. § 32–15–06 and Square Butte.

## IV

[¶ 15] The Landowners argue they are entitled to a jury trial to determine compensation for the District's activities on their property. Because "a proceeding for a court order authorizing examinations and surveys under N.D.C.C. § 32–15–06 is preliminary to the condemnation action itself and is not a condemnation proceeding," a jury trial would be premature. *Alliance Pipeline*, 2013 ND 117, ¶ 15, 833 N.W.2d 464 (internal quotation marks omitted). The District's permit for entry "constitutes no claim for relief in favor of the owner of the land except for injuries resulting from negligence, wantonness, or malice." N.D.C.C. § 32–15–06. The Landowners are not entitled to a jury trial where no such evidence exists.

## V

[¶ 16] We affirm the district courts' orders.

[¶ 17] GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, S.J., DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.

[¶ 18] The Honorable BENNY A. GRAFF, Surrogate Judge, sitting in place of McEVERS, J., disqualified.