McEvers, Justice.
 

 [¶1] Gene Grasser appeals from an amended judgment entered on March 17, 2017, awarding primary residential responsibility to Stephanie Grasser and distributing marital property and debts. We conclude the district court did not abuse its discretion by denying Gene's request for recusal or by finding Gene in contempt and awarding sanctions which it did not reimburse. We further conclude the court did not clearly err by awarding Stephanie primary residential responsibility of the parties' child or by distributing the parties' marital property and debts. We affirm.
 

 I
 

 [¶2] Gene and Stephanie Grasser were married in October 2000, and had a child, S.G., born in 2004. The marriage was tumultuous, and the record reflects Gene's conduct included violence, criminal conduct, threats of violence, hostile and vulgar language, and substance abuse. During the marriage, Stephanie left the marital home for extended periods of time. In July 2014, Stephanie filed for a divorce.
 

 [¶3] On October 3, 2014, Gene filed a motion to continue an interim hearing. In the same motion, Gene indicated he was filing a demand for recusal. On October 8, 2014, Gene filed a motion for demand for a change of judge requesting the judge recuse himself, indicating he had concerns about prior relationships between the court and Stephanie as well as between the court and witnesses involved in the case. Stephanie responded to the demanded recusal and requested an emergency telephonic hearing. During the telephonic hearing on October 8, 2014, the judge acknowledged he knew who Stephanie was, but denied any type of relationship between Stephanie or the other witnesses. The court denied the demand for recusal on the record.
 

 [¶4] On October 10, 2014, the district court held a hearing for an interim order and again addressed the motion demanding a change of judge. The judge reiterated that he recollected who Stephanie was, but had no relationship with her. The court indicated Gene could bring another motion if he had any information he thought was relevant. The court stated "I do take the appearance of impropriety very seriously," and from what had been presented, the judge did not find grounds to recuse himself. A written order followed denying the motion for reasons stated on the record.
 

 *103
 
 [¶5] On multiple occasions throughout the divorce proceeding, Stephanie moved the district court to find Gene in contempt, to compel discovery, and award her sanctions and attorney's fees. The court found Gene in contempt of court, and awarded sanctions and attorney's fees. The court also ordered Gene to produce the discovery requested multiple times.
 

 [¶6] The district court entered a partial summary judgment in May 2015, granting the parties' divorce, reserving issues to be addressed at trial. The court held a trial on September 21 and 23, 2016, regarding primary residential responsibility of their child and division of marital property and debts. The judgment was filed in March 2017. Gene filed a notice of appeal in May 2017.
 

 II
 

 A
 

 [¶7] Gene argues the district court erred in addressing the motion for recusal. At the October 8 and 10, 2014 hearings, Gene indicated he had concerns about prior relationships between the court and Stephanie as well as the court and witnesses.
 

 [¶8] Gene labeled his written motion as a demand for a change of judge and cited to N.D.C.C. § 29-15-21 in his brief supporting the motion. However, Gene argued in his brief and during the hearings for the judge to recuse himself based on impartiality. A motion for recusal and a demand for a change of judge are two separate motions. This Court is not bound by a party's label and may look to the substance of the motion to determine the proper classification.
 
 Eagleman v. State
 
 ,
 
 2016 ND 54
 
 , ¶ 18,
 
 877 N.W.2d 1
 
 . Based on his position in the district court we will review Gene's argument as a motion for recusal.
 

 [¶9] A motion for recusal is reviewed under the abuse of discretion standard.
 
 Rath v. Rath
 
 ,
 
 2013 ND 243
 
 , ¶ 14,
 
 840 N.W.2d 656
 
 . A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law.
 
 Lizakowski v. Lizakowski
 
 ,
 
 2017 ND 91
 
 , ¶ 26,
 
 893 N.W.2d 508
 
 .
 

 The rules of judicial conduct provide that a judge is required to avoid impropriety and the appearance of impropriety in all of the judge's activities. " 'The law presumes a judge is unbiased and not prejudiced.' " We have said "[a] ruling adverse to a party in the same or prior proceeding does not render a judge biased so as to require disqualification." The test for the appearance of impartiality is one of reasonableness and recusal is not required in response to spurious or vague charges of impartiality.
 

 Rath
 
 , at ¶ 14 (citations omitted). "Unlike a demand under N.D.C.C. § 29-15-21, a district court judge is not immediately divested of authority upon the filing of a motion to recuse."
 
 Schweitzer v. Mattingley
 
 ,
 
 2016 ND 231
 
 , ¶ 15,
 
 887 N.W.2d 541
 
 . "While a judge has a duty to recuse when required by the Code of Judicial Conduct, a judge also has an equally strong duty not to recuse when the facts do not require recusal."
 
 Id.
 
 at ¶ 13. A judge shall not permit relationships to influence the judge's judicial conduct or judgment. N.D. Code Jud. Conduct Canon 2.4(B).
 

 [¶10] Gene made vague charges of potential lack of impartiality based on "concerns about prior relationships." However, when the district court asked about the substance of the concerns during the emergency telephonic hearing, Gene's attorney indicated "I have no information
 
 *104
 
 one way or the other-but it's my client's position that Your Honor has previously spent time, like quality time, with Stephanie, as well as a long standing friendship with her that stems from high school interaction." The judge responded a dating relationship never happened. The judge indicated he knew who Stephanie was, but was never in any type of relationship with her. The judge concluded he was not inclined to recuse himself without Gene's attorney providing affidavits showing information of a closer relationship to the individuals involved. Gene did not provide any evidence other than the initial allegations of potential partiality. Therefore, the court did not abuse its discretion by denying Gene's request for recusal.
 

 B
 

 [¶11] Gene argues the district court erred in failing to order reimbursement to him for sanctions and attorney's fees entered against him. Throughout the divorce proceedings, the court entered multiple orders finding Gene in contempt and awarded sanctions and attorney's fees to Stephanie. Gene argues the court sanctioned him for failing to provide full and complete discovery at a time when his attorney failed to properly represent him. Attorney Nicole Foster represented Gene when the divorce began. There were three orders awarding sanctions during the time Foster represented Gene. Another attorney took over Gene's case and the court entered two additional orders for sanctions. Gene cites to three disciplinary board cases against Foster, alleging he was sanctioned for missing deadlines he knew nothing about.
 

 [¶12] The district court may impose a sanction for contempt under N.D.C.C. ch. 27-10. A court may award sanctions under N.D.R.Civ.P. 11 against an attorney, or a represented party, or both, if the requirements of the rule are violated by them.
 
 Dietz v. Kautzman
 
 ,
 
 2004 ND 119
 
 , ¶ 14,
 
 681 N.W.2d 437
 
 ;
 
 see also
 
 N.D.R.Civ.P. 11.
 

 A district court also has inherent authority to sanction a litigant for misconduct. Sanctions must be reasonably proportionate to the misconduct. When sanctioning a party for misconduct, a district court should consider and make findings on the culpability or state of mine of the party against who sanctions are being imposed, the prejudice to the moving party, the impact of the prejudice on the moving party's ability to present or defend the party's case, and the availability of less severe sanctions.
 

 A district court has discretion in awarding attorney fees as a sanction in divorce actions. An award of attorney fees as a sanction will not be disturbed on appeal unless the court abuses its discretion. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.
 

 Brew v. Brew
 
 ,
 
 2017 ND 242
 
 , ¶ 32,
 
 903 N.W.2d 72
 
 (quoting
 
 Lewis v. Smart
 
 ,
 
 2017 ND 214
 
 , ¶ 32,
 
 900 N.W.2d 812
 
 ).
 

 [¶13] "An order or judgment finding a person guilty of contempt is a final order or judgment for purposes of appeal." N.D.C.C. § 27-10-01.3(3). Gene did not appeal any of the five contempt orders, the last which was issued on March 6, 2017. Instead, Gene filed this appeal from the amended judgment on May 19, 2017. An appeal of a contempt order must be made within "60 days after entry of the judgment or order being appealed." N.D.R.App.P. 4(c). More than 60 days elapsed between the final contempt order and the notice of appeal. Gene failed to timely appeal any of the contempt orders
 
 *105
 
 and is, therefore, bound by them.
 
 See
 

 Negaard v. Negaard
 
 ,
 
 2005 ND 96
 
 , ¶ 11,
 
 696 N.W.2d 498
 
 .
 

 [¶14] Gene did not formally raise the issue of reimbursement of imposed sanctions by motion, rather he raised it for the first time in a post-trial brief. He argued:
 

 Gene strongly believes that the sanctions that were imposed on him and the money that he was required to pay [Stephanie's attorney] was unjustified and due to his former lawyer's actions and inactions, and that the court should require Stephanie and [her attorney] to return to Gene those funds.
 
 If the court refuses to do so, that it is Gene's position that Stephanie should be required to pay her own attorney fees in this matter
 
 -she has already received more than enough compensation for her attorney to the inactions and mistakes of Gene's prior attorneys.
 

 (Emphasis added.) The district court did not make a specific finding on this request.
 

 [¶15] Gene's request for relief in his post-trial brief was made in the alternative, either have Stephanie refund the imposed attorney's fees or require Stephanie to pay her own attorney's fees. Even assuming Gene adequately and timely raised the issue, he received the requested relief, because the district court ordered that the parties were responsible for their own attorney's fees. Therefore, we conclude the court did not abuse its discretion.
 

 C
 

 [¶16] Gene argues the district court erred in awarding primary residential responsibility to Stephanie. Gene alleges the court used non-recent information and erred in applying the best interest factors.
 

 For the purpose of parental rights and responsibilities, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:
 

 a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.
 

 b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.
 

 c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.
 

 d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.
 

 e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.
 

 f. The moral fitness of the parents, as that fitness impacts the child.
 

 g. The mental and physical health of the parents, as that health impacts the child.
 

 h. The home, school, and community records of the child and the potential effect of any change.
 

 i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference,
 
 *106
 
 including whether the child's preference was based on undesirable or improper influences.
 

 j. Evidence of domestic violence. In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential responsibility for the child. ...
 

 k. The interaction and inter-relationship, or the potential for interaction and inter-relationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.
 

 l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.
 

 m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.
 

 N.D.C.C. § 14-09-06.2(1).
 

 [¶17] Gene argues the district court erred in its findings for almost every statutory factor. The court made findings of fact as to each best interest factor. The court found subsections (a), (b), (e), (h), (j), (k), (l), and (m) favor neither party, subsections (c) and (d) slightly favor Stephanie, subsections (f) and (g) favor Stephanie, and subsection (i) favors Gene. Gene argues the court ignored evidence resulting in the misapplication of the best interest factors in this case.
 

 We exercise a limited review of child custody awards. A district court's decisions on child custody, including an initial award of custody, are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result. A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult child custody decision involving two fit parents.
 

 Thompson v. Thompson
 
 ,
 
 2018 ND 21
 
 , ¶ 7,
 
 905 N.W.2d 772
 
 (quoting
 
 Jelsing v. Peterson
 
 ,
 
 2007 ND 41
 
 , ¶ 11,
 
 729 N.W.2d 157
 
 ).
 

 [¶18] Gene argues the information in the parenting investigator's report, along with the testimony of the parenting investigator, demonstrates the majority of the best interest factors should have favored him. While the investigator's report included information favorable to Gene, ultimately the investigator recommended it was in the child's best interest for Stephanie to have primary residential responsibility and that Gene's parenting time should
 
 *107
 
 be structured and limited. The district court concluded it is in the best interest of the minor child to be placed in the primary residential care of Stephanie, consistent with the parenting investigator's recommendation. The court has discretion to determine what weight to assign to the parenting investigator's conclusions.
 
 Heinle v. Heinle
 
 ,
 
 2010 ND 5
 
 , ¶ 7,
 
 777 N.W.2d 590
 
 . The court does not have to, nor should it, regard a parenting investigator's recommendation as conclusive.
 

 Id.
 

 Furthermore, the court does not need to follow a parenting investigator's recommendation, rather the court should take the parenting investigator's report into consideration and come to its own conclusion.
 
 Wolt v. Wolt
 
 ,
 
 2010 ND 26
 
 , ¶ 9,
 
 778 N.W.2d 786
 
 .
 

 [¶19] Here, the court indicated it gave credit to the child's preference to live primarily with her father, but found it was the only factor favoring Gene. Among other things, the court considered: (1) Stephanie appears more involved and supportive of the child's extracurricular activities and school activities, (2) Gene was involved in a number of incidents which cause concern as to how his conduct and behavior affects and will continue to affect the minor child, (3) Gene's temperament and demeanor toward people, (4) Gene had two separate domestic violence protection orders entered against him, (5) a police report indicated a terrorizing and harassment charge from a woman Gene was dating from 2014, (6) Gene was convicted in 2014 for a DUI, (7) Gene's counseling records indicate anger outbursts, depressed thoughts, suicidal ideation, and hopelessness, and (8) an incident regarding Gene's mother in which a police report was filed.
 

 [¶20] Gene argues the district court erred by using evidence that is not current, and conduct that did not impact the child, to determine factor (f) favored Stephanie. Factor (f) considers "[t]he moral fitness of the parents, as that fitness impacts the child." N.D.C.C. § 14-09-06.2(1)(f). The court stated factor (f) favors Stephanie.
 

 The evidence before the [c]ourt is replete with conduct of [Gene] that involves violence, criminal conduct, threats of violence, extreme and hostile language and vulgarity, protection orders, depression, alcohol and substance abuse. Specifically: (1) The transcripts and Recordings set forth in Exhibit 14 represent arguably the most heinous and abusive language that this [c]ourt has ever seen from one spouse to another. [Gene] then had two separate domestic violence protection orders entered against him in favor of [Stephanie]; (2) Ex 26 sets forth the November 23, 2014 police report regarding a terrorizing and harassment charge ... consistent with the type of treatment experienced by [Stephanie]; (3) [Gene] then received a dui conviction to which he plead [sic] guilty to in December of 2014 ...; (4) [Gene's] counseling records ... are replete with references to anger outbursts, depressed thoughts, suicidal ideation, and hopelessness. In addition, the records are replete of ongoing alcohol and substance abuse as well as physical violence incidents. For example, in [a] note dated June 16, 2015 it is reported that he had another domestic situation that required police intervention, that he had been using substances, and that alcohol "was also" involved when he has had his angry outbursts. Thereafter, the June 30, 2015 [social worker's report] reports that [Gene] "again got drunk this past week, was confrontational with someone and was kicked out of the bar". The report further notes that "his use of substances has increased. ..."; (5) Thereafter, [Gene] had an altercation with his own mother on March 16, 2016. [His mother] testified that all of the allegations of
 
 *108
 
 hers as recited in the report were true and accurate. ... Perhaps most telling are the quotes where [his mother] was laying on the floor and [Gene] told her: "Alright you piece of shit you can lay there till they come and get you" followed up by the language [Gene] used to her when she was trying to get her keys to leave (per report not an exact quote) "You just try and you won't make it out of her [sic], you'd be dead." The [c]ourt does note that [Gene is] receiving counseling and is commended for that. Testimony was also received that he is active in his church.
 

 However, the above all demonstrates an ongoing pattern of inappropriate conduct, all of which is consistent with what [Stephanie] described to the [c]ourt as years of emotional torment and abuse by [Gene]-which he apparently continues to this date albeit towards people other than [Stephanie]. This factor favors [Stephanie].
 

 The record reflects some of the conduct discussed in the court's findings on factor (f) happened over five years ago. However, several of the findings noted specific dates, all of which happened after the divorce proceedings were commenced. The court found this evidence demonstrated an ongoing pattern of inappropriate conduct. Gene has cited no authority that the court cannot consider conduct during a pending divorce or during the marriage in determining factor (f). While the court did not discuss the impact of Gene's moral fitness on the child under factor (f), the conduct weighing against his moral fitness was discussed under factor (c).
 
 See
 

 Dieterle v. Dieterle
 
 ,
 
 2013 ND 71
 
 , ¶ 7,
 
 830 N.W.2d 571
 
 (concluding a court need not make separate findings of fact for each factor and a court's findings regarding one factor may be applicable to another factor). Gene has not persuaded this Court that the district court's findings on factor (f) are clearly erroneous.
 

 [¶21] The remainder of Gene's arguments are nothing more than asking this Court to reweigh the evidence. The district court made multiple findings of fact in accordance with the law which are supported by the record. Furthermore, considering the entire record, we are not left with a definite and firm conviction a mistake has been made. Therefore, the court did not clearly err in awarding Stephanie primary residential responsibility of the minor child.
 

 D
 

 [¶22] Gene argues the district court erred in distributing the parties' property and debts. Again, it appears Gene is asking this Court to reweigh the evidence and assess credibility of the witnesses. Gene argues the court failed to include loans that Gene received over time from his family and erred when applying the
 
 Ruff-Fischer
 
 guidelines.
 

 The standard for reviewing marital property distributions is well-settled. "A district court's distribution of marital property is treated as a finding of fact, which we review under the clearly erroneous standard of review." "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, we are left with a definite and firm conviction a mistake has been made." "This Court views the evidence in the light most favorable to the findings, and the district court's findings of fact are presumptively correct."
 

 A district court is required to make an equitable distribution of all the divorcing parties' marital property and debts. "All property held by either party, whether held jointly or individually, is considered marital property, and the court must determine the total value of the marital
 
 *109
 
 property before making an equitable distribution." Marital property ordinarily is valued as of the date of trial. After the court values the property, it must then equitably divide the entire marital estate under the
 
 Ruff-Fischer
 
 guidelines, which require the court to consider the following factors in the division:
 

 [t]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.
 

 McCarthy v. McCarthy
 
 ,
 
 2014 ND 234
 
 , ¶¶ 8-9,
 
 856 N.W.2d 762
 
 (citations omitted). "Under North Dakota law, it is well-established that a property distribution does not need to be equal to be equitable, but a substantial disparity must be explained so as to provide some indication of the rationale of the [district] court in distributing the property."
 
 Id.
 
 at ¶ 13 (citations and quotation omitted). "[T]he length of the marriage is relevant to the distribution of gifts and inherited property as part of the 'equitable' division of the marital estate."
 
 Bladow v. Bladow
 
 ,
 
 2003 ND 123
 
 , ¶ 8,
 
 665 N.W.2d 724
 
 . "In general, a lengthy marriage supports an equal division of all marital assets."
 

 Id.
 

 [¶23] In a bench trial, it is for the district court to determine credibility issues and we do not reweigh the evidence or reassess credibility.
 
 Roberson v. Roberson
 
 ,
 
 2004 ND 203
 
 , ¶ 10,
 
 688 N.W.2d 380
 
 . The court's choice between two permissible views of the evidence is not clearly erroneous.
 

 Id.
 

 Here, the court noted that a debt in the amount of $500,000 was abandoned during trial and focused solely on the debt Gene alleged to have with his parents in excess of two million dollars. The court considered testimony from Gene, his mother, and a banker regarding the alleged loans. Gene provided no documentation of the loans and testimony indicated there was nothing in writing regarding the loans. Gene did not disclose any information during the discovery process and it was not included on the financial statement dated May 11, 2015. The court noted:
 

 [T]hat is not credible to suggest that a litigant actually had indebtedness in an amount in excess of $2 million but was unable to recall it only weeks before trial (in discovery) or would fail to disclose it in an official Financial Statement dated May 11, 2015 where [Gene] signed his name setting forth that the Financial Statement was true and correct.
 

 The court indicated it found no factual or legal basis to include the alleged debts as part of the marital estate and valued the debts as $0 in the final figures.
 

 [¶24] Gene argues the district court erred in the application of the
 
 Ruff-Fischer
 
 guidelines, most significantly the length of the marriage. Gene argues the court erred in finding the marriage lengthy because Stephanie left the home on different occasions. Although Stephanie left the home, Gene does not allege they were ever legally separated or allege any other factors which would indicate they were not married during that time. Gene and Stephanie were married for 15 years. A 15-year marriage may qualify as a long-term marriage.
 
 See
 

 Wold v. Wold
 
 ,
 
 2008 ND 14
 
 , ¶ 17,
 
 744 N.W.2d 541
 
 .
 

 [¶25] We have considered other issues raised and conclude they are either unnecessary to our opinion or are without merit. We conclude the district court did not err in its application of the
 
 Ruff-Fischer
 
 guidelines.
 

 *110
 
 III
 

 [¶26] We affirm the amended judgment entered on March 17, 2017.
 

 [¶27] Lisa Fair McEvers
 

 Jon J. Jensen
 

 Jerod E. Tufte
 

 Gary H. Lee, D.J.
 

 Gerald W. VandeWalle, C.J.
 

 [¶28] The Honorable Gary H. Lee, D.J., sitting in place of Crothers, J., disqualified.