# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 109

SCS Carbon Transport LLC,                                    Petitioner and Appellee

v.

Howard L. Malloy, Trustee of
the Harry L. Malloy Trust No. 2
dated May 25, 2008, Connie Erickson,
Larry Hoge, Dean Twardowski,
BRH LLLP, 8N2E Properties LLP,
Paul E. Kuetemeyer, Hoge Farm
Limited Partnership, Timothy J. Hoge,
John M. Carrels, Loren E. Staroba
and Diane L. Staroba, Trustees of
the Staroba Revocable Living Trust
dated April 8, 2016, Verdell T. Jordheim
and Phyllis J. Jordheim Trustees
of the Verdell J. Jordheim and
Phyllis J. Jordheim Living Trust dated
February 25, 2005, Valera A. Hayen,
Shirley Waloch, Randall Waloch and
Karla Waloch, SPLJ, LLP,                                    Respondents and Appellants

### Nos. 20230149, 20230162-20230176

Appeals from the District Courts of Morton and Burleigh Counties, South Central Judicial District, and Dickey, Richland, and Sargent Counties, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Keith R. Blackwell (argued), Brian D. Boone (on brief), Michael R. Hoernlein (on brief), and Kyle R. Hair (on brief), Charlotte, NC, and Lawrence Bender (appeared) and Spencer D. Ptacek (on brief), Bismarck, ND, for petitioner and appellee.

Brian E. Jorde (argued), Omaha, NE, and Steven J. Leibel (appeared) and David M. Knoll (on brief), Bismarck, ND, for respondents and appellants.

Philip J. Axt (argued), Solicitor General, Bismarck, ND, for amicas curiae State of North Dakota.

Derrick L. Braaten (argued), Bismarck, ND, for amicas curiae Northwest Landowners Association.

Matthew C. Tews, Minneapolis, MN, for amicas curiae Basin Electric Power Cooperative.

**Tufte, Justice.**

[¶1]     Respondents ("Landowners") appeal from judgments and an order permitting SCS Carbon Transport LLC ("Summit") to enter their lands to conduct surveys and examinations. Landowners argue the statute authorizing entry is unconstitutional on its face and as applied to them and the judgments and order exceed the scope of the statute by allowing unlimited entry without restrictions. We affirm, concluding the Landowners have not established a constitutional violation on the face of the entry statute or as applied to them, and the judgments and order do not exceed the scope of the entry statute.

I

[¶2]     Summit intends to construct an interstate pipeline in North Dakota and four other states which would transport carbon dioxide and deliver it to sequestration sites in North Dakota. Summit alleged it needs to access Landowners' lands to determine the appropriate pipeline route. After Landowners denied Summit permission to enter their lands to conduct surveys, Summit commenced these lawsuits against Landowners. Summit's petitions requested a court order confirming its right under N.D.C.C. § 32-15-06 (the "entry statute") to enter the lands to conduct pre-condemnation surveys and examinations. Summit's petitions asserted that the proposed surveys would be conducted in a manner compatible with the greatest public benefit and the least private injury, and Summit would provide compensation for any damages caused by the survey activities and comply with other reasonable restrictions imposed by the district court.

[¶3]     In response to the petitions for entry, Landowners answered and counterclaimed, seeking declaratory and injunctive relief, declaring the entry statute unconstitutional in violation of the federal and state takings clauses and enjoining Summit from entering their lands. Summit moved for summary judgment, arguing there is no genuine dispute of material fact and it is entitled as a matter of law to judgment confirming its authority to enter Landowners' property to conduct surveys and examinations. Landowners opposed the motion, arguing the entry statute is unconstitutional and void, and in the alternative, there is a genuine dispute of material fact whether Summit is a common pipeline carrier authorized to exercise eminent domain, the surveys proposed by Summit go beyond what

the entry statute allows, and, if entry is granted, then they have a right to reasonable protections.[1]

[¶4]    After oral argument on the motion, the district court granted summary judgment to Summit, concluding the entry statute does not constitute an unconstitutional per se taking, Summit is a common carrier authorized to exercise eminent domain, and the proposed surveys and examinations are the type of minimally invasive surveys and examinations allowed under the entry statute. In its order for judgment, the court relied on Summit's stated plan to "restore each property to a near pre-examination condition" and "promptly repair [any] damage or reimburse Respondents for the repairs, at their choice." The court entered judgments, granting Summit's petitions for entry and dismissing Landowners' counterclaims. The judgments state:

> The Court confirms that Summit has the right under N.D.C.C. § 32-15-06 to enter upon the lands described on Exhibit A, attached hereto, for the purpose of completing civil, environmental, and archaeological/cultural, surveys and examinations, including any necessary geotechnical/soil borings, archaeological/cultural resource surveys and examinations, and including any necessary core or water sampling activities subject to any conditions.

Landowners appeal the judgments and order granting summary judgment.

II

[¶5]    Our standard of review is well established:

> Summary judgment under N.D.R.Civ.P. 56 is a procedural device for the prompt resolution of a controversy on the merits if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. Summary judgment is appropriate if the issues in the case are such that the resolution of any factual disputes will not alter the result. Whether the district court properly granted summary judgment is a question of law that we review de novo on the entire record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.

---

[1] Landowners have not challenged on appeal that Summit meets the requirements of a condemning authority.

2

*Vic Christensen Min. Tr. v. Enerplus Res. (USA) Corp.*, 2022 ND 8, ¶ 8, 969 N.W.2d 175.

III

[¶6]    Landowners argue the entry statute is unconstitutional on its face and as applied to them under the Takings Clause of the Fifth Amendment and article I, § 16 of the North Dakota Constitution.

[¶7]    "A claim that a statute on its face violates the constitution is a claim that the Legislative Assembly exceeded a constitutional limitation in enacting it, and the practical result of a judgment declaring a statute unconstitutional is to treat it 'as if it never were enacted.'" *State v. Anderson*, 2022 ND 144, ¶ 7, 977 N.W.2d 736 (quoting *Sorum v. State*, 2020 ND 175, ¶ 21, 947 N.W.2d 382). We interpret statutes "in harmony with the state and federal constitutions to avoid constitutional infirmities." *Hector v. City of Fargo*, 2014 ND 53, ¶ 13, 844 N.W.2d 542; N.D.C.C. § 1-02-38(1) (providing interpretive presumption that intended meaning of statute complies with state and federal constitutions); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-50 (2008) ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."). Under N.D. Const. art. VI, § 4, we "shall not declare a legislative enactment unconstitutional unless at least four of the members of the court so decide."

[¶8]    An "as-applied" challenge, on the other hand, is a claim that the constitution was violated by the application of a statute in a particular case. *Anderson*, 2022 ND 144, ¶ 7. "Generally, a party may only challenge the constitutionality of a statute as applied to that party." *Id.* "As a general rule a court will inquire into the constitutionality of a statute only to the extent required by the case before it and will not anticipate a question of constitutional law in advance of the necessity of deciding it." *Id.* at ¶ 11. Accordingly, when both an as-applied challenge and a facial challenge are raised, we generally first consider the narrower as-applied challenge. *See Anderson*, 2022 ND 144, ¶¶ 7, 11 ("[A] court will inquire into the constitutionality of a statute only to the extent required by the case before it and will not anticipate a question of constitutional law in advance of the necessity of deciding it, and will not formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."); *State v. Morris*, 331 N.W.2d 48, 58 (N.D. 1983) (limiting review to as-applied challenge where appellant failed to show statute was unconstitutional as applied to him). If we conclude the application of a statute

3

is unconstitutional as applied in a case, we may grant relief without the necessity of determining whether it is also unconstitutional in circumstances not presented in that case.

A

[¶9]    Summit argues Landowners failed to preserve an as-applied challenge on appeal by failing to raise the issue in the district court. Specifically, Summit asserts the phrase "as applied" does not appear in Landowners' brief opposing summary judgment and they did not cite case law articulating the applicable standard. Landowners argue they have maintained the same arguments; namely, the access requested under the entry statute is not "minimally invasive" and reasonable conditions must be ordered. Although Landowners did not use the label "as applied" in their summary judgment brief, the substance of their arguments concerning the requirements of minimal invasion and reasonable conditions on appeal invoke both facial and as-applied claims and are the same as the arguments before the district court. *See Grasser v. Grasser*, 2018 ND 85, ¶ 8, 909 N.W.2d 99 ("This Court is not bound by a party's label and may look to the substance of the motion to determine the proper classification."). Therefore, we conclude Landowners have preserved these arguments for appeal.

B

[¶10]   Landowners' as-applied challenge asserts the district court applied the entry statute and reached an unconstitutional result because it did not include in its order any limits on the nature, extent, or duration of the permitted examinations, which results in an unconstitutional taking. Because the judgment on appeal imposed no additional restrictions beyond those in the statute itself, the as-applied challenge differs from the facial challenge only if we interpret the entry statute to require the court to include restrictions when applying the statute or if the judgment granted entry exceeding the limits in the entry statute.

[¶11]   We begin with the language of the entry statute applied by the district court in this case.

> In all cases when land is required for public use, the person or corporation, or the person's or corporation's agents, in charge of such use may survey and locate the same, but it must be located in the manner which will be compatible with the greatest public benefit and the least private injury and subject to the provisions of section 32-15-21. Whoever is in charge of such public use may enter upon the land and make examinations, surveys,

4

and maps thereof, and such entry constitutes no claim for relief in favor of the owner of the land except for injuries resulting from negligence, wantonness, or malice.

N.D.C.C. § 32-15-06.

[¶12] As presented here, Summit requested and the district court entered judgment confirming Summit's authority under the entry statute to complete a proposed survey and examination on Landowners' property. Landowners argue that without further limitations, the court's judgment results in a taking. A taking effected by the judicial branch through a court order or judgment, as is the asserted as-applied taking here, is subject to the same analysis as a taking by another department of government. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.,* 560 U.S. 702, 714-15 (2010).

[¶13] We interpret judgments as we do contracts:

> The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the court. If the language used in a judgment is ambiguous there is room for construction, but if the language employed is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used. The judgment should be so construed as to give effect to each and every part of it, and bring all the different parts into harmony as far as this can be done by fair and reasonable interpretation.

*Thomas v. Stone*, 2006 ND 59, ¶ 11, 711 N.W.2d 199 (citations omitted).

[¶14] The language of the judgment, applying the entry statute to dispute here, states in pertinent part:

> The Court confirms that Summit has the right under N.D.C.C. § 32-15-06 to enter upon the lands described on Exhibit A, attached hereto, for the purpose of completing civil, environmental, and archaeological/cultural, surveys and examinations, including any necessary geotechnical/soil borings, archaeological/cultural resource surveys and examinations, and including any necessary core or water sampling activities subject to any conditions.

In its order granting summary judgment, incorporated by reference in the judgment, the district court acknowledged the narrow interpretation this Court has given to the terms "examinations" and "surveys" in the entry statute. It also acknowledged Summit's stated

intent to limit the duration of the entry and restore each property to a near pre-examination condition.

[¶15]   Landowners argue the district court erred by not providing them any protections or placing any restrictions on Summit in entering their lands. In their brief opposing summary judgment, Landowners sought "time, place, and manner" restrictions on Summit's entry to perform surveys and examinations. In their supporting declarations, Landowners included several such requests, including access only between 9:00 a.m. and 5:00 p.m.; a 48-hour notice; a 16-hour limit; the right of entry be terminated after 30 days; no entry into buildings, cutting trees or shrubs, leaving garbage on property, or removing rocks or historical artifacts; posting a bond; closing gates; returning property to the condition it was in prior to entry; and indemnifying and holding Landowners harmless from claims, losses, or damages. Summit concedes our cases have affirmed additional protective conditions as within the discretion of the district court but argues the court did not abuse its discretion in rejecting Landowners' "extra-statutory restrictions."

[¶16]   We have held that the district court in its discretion *may* consider and impose additional restrictions on entry, but our decisions do not *require* the district court to impose limiting conditions beyond the limitations of the statute. *See Square Butte Elec. Coop. v. Dohn,* 219 N.W.2d 877, 883-84 (N.D. 1974). In *Square Butte,* the district court issued an "appropriate order permitting such a survey and limited testing under reasonable conditions and with reasonable protection to the landowner." *Square Butte Elec. Co-op., at* 884. This Court acknowledged the entry statute does not prohibit "protective conditions," *id.*; but did not interpret the statute to require them. In *In re 2015 Application,* this Court affirmed an order providing notice requirements and restrictions on soil boring in approving the examinations at issue in that case without indicating they were required by the entry statute. *In re 2015 Application for Permit to Enter Land for Surveys and Examination Associated with a Proposed N.D. Diversion and Associated Structures,* 2016 ND 165, ¶¶ 11, 14, 883 N.W.2d 844. The plain text of the statute does not describe any restrictions or conditions the court may or must consider. Here, for the first time, we are presented with an order confirming right of entry under the statute without additional limitations. We conclude the statute does not require the district court's imposition of conditions not prescribed in the statute. Whether, without such additional restrictions in the judgment, application of the entry statute constitutes an unconstitutional taking is the essence of the facial challenge we consider below.

6

[¶17] Landowners also argue the judgment constitutes an as-applied unconstitutional taking because it has "no limitations on assignment or transfer and this right does not expire" and is in essence a "perpetual implied easement." We disagree with this broad reading of the judgment. Reading it reasonably and as a whole, the judgment does not grant perpetual authority to enter. None of the examinations referenced in the judgment is indefinite. The district court recognizes Summit's purpose is "completing" several "surveys and examinations." In its order granting summary judgment, the district court described the context of the pipeline project, including determination of the proposed route, negotiations for access, applications for permits, and contracting with customers for service. From this context, it is apparent that Summit did not request—and the district court judgment did not grant—an indefinite or perpetual right of access. Contrary to Landowners' arguments, the district court judgment does not exceed the authority of the entry statute or grant Summit an indefinite right to enter on appellants' land any time of day or night.

C

[¶18] Landowners argue that without additional restrictions or conditions imposed by the district court, the entry statute on its face violates the state and federal takings clauses. The court confirmed Summit's authority to conduct examinations and surveys under the entry statute without limiting the scope of authority under the statute. Because we interpret the statute as not requiring the court to impose additional conditions, and here the court confirmed Summit has the full scope of authority permitted by the entry statute, we must resolve Landowners' facial constitutional challenge.

[¶19] Our review of facial challenges is de novo:

> When interpreting constitutional provisions, we apply general principles of statutory construction. We aim to give effect to the intent and purpose of the people who adopted the constitutional provision. We determine the intent and purpose of a constitutional provision, if possible, from the language itself. In interpreting clauses in a constitution we must presume that words have been employed in their natural and ordinary meaning.
> A constitution must be construed in the light of contemporaneous history—of conditions existing at and prior to its adoption. By no other mode of construction can the intent of its framers be determined and their purpose given force and effect. Ultimately, our duty is to reconcile statutes with the constitution when that can be done without doing violence to the language of either. Under N.D. Const. art. VI, § 4, we shall not declare a legislative

7

> enactment unconstitutional unless at least four of the members of the court
> so decide.

*Sorum v. State*, 2020 ND 175, ¶¶ 19-20, 947 N.W.2d 382 (cleaned up). To resolve the claim, we must interpret the language of the entry statute alongside the constitutional provisions and determine whether a conflict exists. *Nw. Landowners Ass'n v. State*, 2022 ND 150, ¶ 15, 978 N.W.2d 679.

[¶20] The North Dakota Constitution provides in part:

> Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner . . . . No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money or ascertained and paid into court for the owner . . . irrespective of any benefit from any improvement proposed by such corporation. Compensation shall be ascertained by a jury, unless a jury be waived.

N.D. Const. art. I, § 16. Although this provision was renumbered from section 14 to section 16 and amended three times, these provisions were enacted as part of the original 1889 constitution.

[¶21] The Fifth Amendment to the United States Constitution provides: "nor shall private property be taken for public use, without just compensation." This clause applies to the taking of an estate in land, easements, other interests, and the functional equivalents of classic takings, such as regulation authorizing a "permanent physical occupation." *Stop the Beach Renourishment, Inc.*, 560 U.S. at 713; *Cass Cnty. Joint Water Res. Dist. v. Aaland*, 2021 ND 57, ¶ 14, 956 N.W.2d 395.

[¶22] Landowners argue the statute is unconstitutional under both the state and federal constitutions, relying primarily, but not exclusively, on *Nw. Landowners Ass'n*, 2022 ND 150, and *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 141 S. Ct. 2063 (2021). To establish a violation under either takings provision, challengers must demonstrate they have a property interest that is constitutionally protected. *Nw. Landowners Ass'n*, 2022 ND 150, ¶ 19 (citing *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998)). "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Id.*

[¶23] Despite the significant textual differences between the state and federal constitutional provisions, in this case the constitutional question under each turns on essentially the same legal-historical question: did the people of North Dakota in 1889 understand the eminent domain power to take private property for public use to encompass a right of entry for pre-condemnation examinations and surveys? If yes, then the original public meaning of the 1889 constitution, continued in effect through today in relevant part, does not conflict with the entry statute. Under the Fifth Amendment, answering the same question in the affirmative would establish a longstanding background principle that property rights under state law do not include the right to bar entry to pre-condemnation surveyors.

[¶24] To avoid a statutory interpretation raising constitutional doubt, *Sprynczynatyk v. Mills*, 523 N.W.2d 537 (N.D. 1994), we have interpreted the entry statute to authorize only surveys and examinations that are "minimally invasive" or "limited." *In re 2015 Application,* 2016 ND 165, ¶ 14; *see also Aaland,* 2021 ND 57, ¶ 14; *Square Butte Elec. Coop.,* 219 N.W.2d at 883-84. We have interpreted the entry statute as not prohibiting "other protective conditions" and, without identifying an independent source of authority to do so, affirmed district court orders providing protections to landowners and restrictions upon entry. *See Square Butte,* at 884; *In re 2015 Application,* at ¶ 11.

[¶25] In its Amicus Brief, the State traces the historical pedigree of the entry statute, persuasively illustrating the longstanding background principle of entry for surveys and examinations. Prior to statehood, the laws of Dakota Territory codified pre-condemnation authority of railroad corporations "to enter upon any land for the purpose of examining and surveying." Laws of Dakota Territory § 2996 (1887). Similar authority "to enter upon any land" for "making surveys and examinations" was extended to persons intending to construct a mill dam expected to damage "real estate not owned by him." *Id.* at § 5597. The 1895 Code of Civil Procedure codified a pre-condemnation right of entry substantially similar to the current provision. *Compare* N.D. Rev. Code § 5960 (1895) with N.D.C.C. § 32-15-06. Where, as here, provisions of the code are substantially the same as a prior statute, they "must be construed as continuations thereof." N.D.C.C. § 1-02-25. The entry statute codifies a background principle of state property law as a limitation on the bundle of sticks that state law defines as property rights.

[¶26] This longstanding statutory authority is consistent with the common law and the law of other states. *Montana Co. v. St. Louis Mining & Milling Co.,* 152 U.S. 160, 167-69, 172 (1894) (recognizing temporary entry for survey or examination was not a taking of owner's

9

right to undisturbed and exclusive use of land); *Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 688-91 (W.D. Va. 2015) (discussing common law privilege to enter for survey); A.L.R.3d 1104 § 7 (Supp. 2021). This reference to the common law is mentioned only as illustration of the background principles of property law and the original public meaning of the 1889 constitution. N.D.C.C. § 1-02-01("The code establishes the law of this state respecting the subjects to which it relates ...."); N.D.C.C. § 1-01-06 ("In this state there is no common law in any case in which the law is declared by the code."). The law defining the right of entry is codified by the entry statute. N.D.C.C. § 32-15-06.

[¶27] Thomas Cooley's treatise concisely summarized the prevailing understanding of property rights at the time of statehood:

> No constitutional principle, however, is violated by a statute which allows private property to be entered upon and temporarily occupied for the purpose of a survey and other incipient proceedings, with a view to judging and determining whether or not the public needs require the appropriation, and, if they do, what the proper location shall be; and the party acting under this statutory authority would neither be bound to make compensation for the temporary possession, nor be liable to action of trespass.

Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union 694 (5th ed. 1883).

[¶28] Because survey access is a longstanding background restriction, Landowners cannot demonstrate that they have a constitutionally protected interest in excluding limited, innocuous intrusion by pre-condemnation surveyors. *Nw. Landowners Ass'n*, 2022 ND 150, ¶ 19 ("[C]hallengers must demonstrate they have a property interest that is constitutionally protected.").

[¶29] Section 32-15-06, N.D.C.C., permits entry with or without pre-approval by the district court. Here, the Landowners did not consent to the requested entry, and Summit went to district court seeking an order confirming right of entry. With or without a court's pre-approval, the statutory authority is limited to entry for purposes of completing three tasks: "mak[ing] examinations, surveys, and maps." Depending on the public use and other circumstances such as the characteristics of the land, these tasks may require a modest amount of time in one visit or may require a more extensive examination over multiple visits. But these are all discrete tasks that have a discernible end point. We have explained

that this statutory authority does not encompass extended occupation of the land or significant interference with its use. *Aaland*, 2021 ND 57, ¶¶ 9, 14.

[¶30] Because the duration of the authorized entry implicates the very core of private property rights—the right to exclude—we interpret the scope of the entry statute as limited to the innocuous surveys and examinations consistent with these historical background principles and thus also with the original public meaning of the North Dakota Constitution. Since statehood, the survey statute has confirmed the purpose of the allowed survey is to narrow the scope of the taking because the particular property taken "must be located in the manner which will be compatible with the greatest public benefit and the least private injury." N.D.C.C. § 32-15-06. Cooley described this temporary entry as having the same purpose: "determining whether or not the public needs require the appropriation, and, if they do, what the proper location shall be." Thomas M. Cooley, Constitutional Limitations 694 (5th ed. 1883).

[¶31] The entry statute limits the entry to the authorized purpose or mission of determining the location and necessary scope of private property taken to serve the greatest public benefit at the lowest cost in terms of private injury (property taken or damaged). A condemnor's entry or occupation beyond this mission implicates constitutionally protected property rights. If the entry exceeds the duration or scope reasonably necessary to complete any necessary "examinations, surveys, and maps," a temporary taking of the right to exclude may be implicated and a judicial remedy may be sought.

[¶32] The purpose or mission of the surveys and examinations thus provides the standard by which we measure the constitutionally permissible scope of entry under the statute. We take guidance from the logic of the line of Fourth Amendment cases flowing from *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). In *Rodriguez*, the U.S. Supreme Court held that a constitutionally permissible traffic stop may not extend longer than the time required for tasks within the scope of the initial purpose of the stop. *State v. Vetter*, 2019 ND 138, ¶ 6, 927 N.W.2d 435. Here, we face constitutional implications on the duration and scope of pre-condemnation examinations and surveys, and similar logic applies. A constitutionally permissible entry may not be longer or more invasive than necessary to complete the examination or survey needed to confirm and minimize the scope of the anticipated taking of private property. As in *Rodriguez*, activities beyond the scope of historically recognized minimally invasive examinations and surveys may not extend the duration of the entry on the land. Although we have not previously drawn this analogy, this purpose-focused restriction is consistent with our prior cases.

11

[¶33] In *Square Butte,* we affirmed the district court's order authorizing an electric cooperative to enter onto lands to make surveys and conduct soil testing and ground resistance measurements. 219 N.W.2d at 879, 884. The surveys and testing were necessary to determine the probable route of a transmission line. *Id.* at 884. The court's order provided the following restrictions: examinations be done in a manner which provides the least private injury, the landowner be provided reasonable notice of entry, the electric cooperative ensure that livestock does not escape and that all fences or gates are left in the manner they are found, access is limited to the area of the proposed taking and that the electric cooperative must file a map showing the area where the power line is to be built, and no cutting of trees. *Id.* at 878-79. We concluded the electric cooperative "established a sufficient basis for an appropriate order permitting such a survey and limited testing under reasonable conditions and with reasonable protection to the landowner." *Id.* at 884.

[¶34] In *In re 2015 Application,* landowners claimed the proposed entry onto their property constituted a taking of private property under the North Dakota Constitution. 2016 ND 165, ¶ 2. We affirmed district court orders authorizing a water resource district's proposed soil borings test for a flood control project proposal, allowing one to two pints of soil to be removed for testing. *Id.* at ¶ 14. The orders required no buildings to be entered or damaged or trees cut, payment of $250/boring, property to be returned to its original condition, damaged property to be repaired or compensation paid, 48-hour notice prior to entry, and for the water resource district to indemnify landowners for any and all claims, losses, or damages. *Id.* at ¶ 11. We concluded that "[a]lthough the proposed soil borings penetrate the ground's surface, the testing is nevertheless minimally invasive, or 'limited,'" and within the scope of the "examinations" permitted under the entry statute. *Id.* at ¶ 14.

[¶35] In *Aaland*, the landowners argued the surveys and examinations were beyond the scope of N.D.C.C. § 32-15-06. 2021 ND 57, ¶ 1. We reversed district court orders authorizing a water resource district to enter lands to conduct examinations and surveys for a flood diversion project, which permitted installation of survey monuments. *Id.* at ¶¶ 1, 3. We concluded "[p]lacement of survey monuments on the Landowners' properties for as long as three years is not an 'innocuous entry' and would seriously impinge upon or impair the rights of the Landowners to the use and enjoyment of their properties." *Id.* at ¶ 14. We further concluded that a "physical occupation of this duration goes beyond the minimally invasive examination and testing permitted" under the entry statute. *Id.*

[¶36] Here, the district court determined the examinations and surveys proposed by Summit were "minimally invasive" and "limited." In granting summary judgment, it

12

concluded that if the examinations were conducted as proposed, they would not constitute an impermissible physical invasion. Properly understood in the context of our longstanding and consistently narrow view of the scope of the entry statute, the court's order did not grant the functional equivalent of an easement, either temporary or permanent. At this time, and on this record, we can only speculate whether Summit's entry onto Landowners' property ultimately exceeds the limited scope permitted by the statute and the constitutional protections against uncompensated takings. Nothing we say here forecloses further proceedings if Summit enters the land and it is "damaged" within the meaning of art. I, § 16, unnecessarily and unreasonably interferes with its ordinary use, or continues to occupy the land beyond the time reasonably needed to complete its examinations, surveys, and maps.

[¶37] We conclude the judgments do not expressly authorize any actions beyond the statute, and the statute does not authorize entry beyond the historical background principles of our property law.

IV

[¶38] The district court here properly confirmed the proposed entry is within the narrow confines of the statute. We affirm the judgments and order granting summary judgment.

[¶39] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

13